Adam Alper (SBN: 196834)
adam.alper@kirkland.com
Akshay S. Deoras (SBN: 301962)
akshay.deoras@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Telephone:  (415) 439-1400
Facsimile:  (415) 439-1500

Michael W. De Vries (SBN: 211001)
michael.devries@kirkland.com
KIRKLAND & ELLIS LLP
555 South Flower Street
Los Angeles, CA 90071
Telephone:  (213) 680-8400
Facsimile:  (213) 680-8500

Gregory Polins (*pro hac vice*)
greg.polins@kirkland.com
KIRKLAND & ELLIS LLP
300 N. LaSalle Dr.
Chicago, IL 60654
Telephone:  (312) 862-2000
Facsimile:  (312) 862-2200

Leslie M. Schmidt (*pro hac vice*)
leslie.schmidt@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900

Kat Li (*pro hac vice*)
kat.li@kirkland.com
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX 78701
Telephone:  (512) 678-9100
Facsimile:  (512) 678-9101

*Attorneys for Plaintiff Apple Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| APPLE INC.,<br><br>            Plaintiff,<br><br>     v.<br><br>ALIVECOR, INC.,<br><br>            Defendant. | CASE NO. 22-CV-07608-HSG<br><br>**APPLE'S MOTION FOR ENTRY OF PROTECTIVE ORDER REGARDING DISCLOSURE AND USE OF DISCOVERY MATERIALS**<br><br>**PUBLIC VERSION**<br><br>Date:   February 1, 2024<br>Time:   2:00 PM<br>Place:  Courtroom 2, 4th Floor<br>Judge:  Hon. Haywood S. Gilliam, Jr. |

# NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on February 1, 2024 at 2:00 PM in Courtroom 2, 4th Floor of the above-entitled Court located at 1301 Clay Street, Oakland, CA 94612, Plaintiff Apple Inc. ("Plaintiff" or "Apple") will, and hereby does, move this Court for entry of a Protective Order Regarding Disclosure and Use of Discovery Materials produced by the parties in this litigation.

This motion is made pursuant to Federal Rules of Civil Procedure 26(c)(1)(G) on the grounds that good cause exists to enter the proposed Protective Order Regarding Disclosure and Use of Discovery Materials (the "Proposed Protective Order"), attached as Exhibit 1 to the Declaration of Gregory Polins filed in support of this motion (the "Polins Declaration"). The parties jointly submitted to the Court that they would file a Motion for Entry of a Protective Order, but, despite numerous attempts to confer with Defendant AliveCor, Inc. ("Defendant" or "AliveCor"), the parties were unable to reach agreement on one provision of the protective order pertaining to data security and procedures in the event of a breach; the rest of the provisions of the Proposed Protective Order are agreed as between the parties.

This Motion is based on this Notice of Motion and Supporting Memorandum of Points and Authorities, the Polins Declaration, and such other written or oral argument as may be presented at or before the time this motion is taken under submission by the Court.

Apple certifies that it attempted in good faith to confer with AliveCor in an effort to resolve the issues described above without Court action. Apple's efforts to resolve the dispute without court intervention are described in the Polins Declaration, submitted herewith.

DATED: November 6, 2023

Respectfully submitted,

KIRKLAND & ELLIS LLP

*/s/ Gregory Polins*
Gregory Polins

*Attorneys for Plaintiff Apple Inc.*

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

The parties agree that a protective order is necessary in this case and have reached agreement on all but one provision, which relates to data security and procedures in the event of a breach. The data security provision that Apple proposes is essential for protecting the highly sensitive information that will be produced in this case, especially in view of the increasing threat of data breaches caused by malicious actors. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉, and the highly sensitive information to be exchanged in this case, Apple proposed data security provision that are clear about what is required, applies equally to the parties, and is proportionate to the need to manage the risk to data produced in this case. Similar provisions have been ordered in numerous cases.[1]

Data security provisions in protective orders are critical as cyberattacks by malicious actors continue to grow in frequency and sophistication. In the first quarter of 2023, the number of cyberattacks in the U.S. increased by 9% and one out of every 75 U.S. organizations were targeted with a ransomware attack.[2] Artificial intelligence, like ChatGPT, opens up new avenues for hackers to

---

[1] *See, e.g. Express Mobile, Inc. v. Microsoft Corp.*, Case No. 20-CV-06152-RS (N.D. Cal. Mar. 18, 2021), Dkt. 64 at 25-26 (requiring any Protected Material be stored on devices "that are password protected and/or encrypted with access limited to persons entitled to access Protected Materials" and identifying specific procedures to follow in the event of a data breach); *In re Robinhood Order Flow Lit.*, Case No. 4:20-cv-09328-YGR (N.D. Cal Mar 17, 2023), Dkt. 133 at 8-9 (requiring parties maintain Protected Materials in a "secure manner that ensures access is limited to the persons authorized under this Order" and providing specific procedures to follow in the event of a data breach); *see also Martin v. Walmart Inc.*, Case No. 2:22-cv-01832-JLS-E (C.D. Cal. Aug. 25, 2022) (Dkt. 28, § 5.5); *Maldonado v. DSV Solutions,* Case No. 5:21-cv-01594-GWSP (C.D. Cal. May 12, 2022) (Dkt. 15, § 5.5); *Frasco v. Flo Health, Inc.*, Case No. 3:21-cv-00757- JD (N.D. Cal. Jan. 11, 2022) (Dkt. 112, § 12.10); *Diaz v. Google LLC*, Case No. 5:21-cv-03080-NC (N.D. Cal. Oct. 12, 2021) (Dkt. 50, § 14.9)*; Cruz v. WalMart Inc.*, Case No. 2:21-cv-00613-WBS-CKD (E.D. Cal. Sept. 3, 2021) (Dkt. 16, § 6); *Cervantes v. Wal-Mart Stores, East, LP*, Case No. 1:21-cv-00750-CMA-NYW (D. Colo. June 29, 2021) (Dkt. 27, § 6); *Klaustech LLC v. Google LLC*, Case No. 4:20-cv-04459-JSW (N.D. Cal. June 24, 2021) (Dkt. 52, § 14.11).

[2] https://blog.checkpoint.com/research/global-cyberattacks-continue-to-rise/

potentially breach advanced cybersecurity software.[3]  Moreover, "[a]s custodians of highly sensitive information, law firms are inviting targets for hackers."[4]  Law firms have access to their clients' most sensitive information—and that of their adversaries.  Indeed, the legal/insurance industry saw a 13% increase in cyberattacks in the first quarter of 2023.[5]

[REDACTED] In light of these increasing risks, it is crucial for protective orders to include provisions that specify adequate measures for handling electronic documents and data and responding to an actual or suspected data breach.[6]

That is what Apple proposes here, which AliveCor opposes. Specifically, Apple's proposed Protective Order includes the following data-security requirements: (1) the parties store confidential data on an information security management system ("ISMS") that implements up-to-date security standards and have a written policy and procedure for doing so; (2) the parties use multi-factor authentication and encryption to protect confidential data sent outside a party's ISMS; and (3) if there is a data breach of a party's ISMS, the parties agree to take reasonable steps to notify the opposing party and work together

---

[3]  https://hbr.org/2023/04/the-new-risks-chatgpt-poses-to-cybersecurity (explaining that ChatGPT significantly increases risks from phishing scams and has the ability to write malicious code).

[4]  https://www.americanbar.org/content/dam/aba/images/news/formal_op_483.pdf.

[5]  https://www.jdsupra.com/legalnews/why-cybersecurity-should-be-top-of-mind-1297423; https://blog.checkpoint.com/research/global-cyberattacks-continue-to-rise/

[6] https://thesedonaconference.org/sites/default/files/publications/International%2520Litigation%2520Principles_Transitional%2520Ed_Jan%25202017.pdf; https://www.fedbar.org/federal-litigation-section/wp-content/uploads/sites/118/2019/12/Fed-Lit-Spring-2018-v2-pdf.pdf (generally discussing the merit of including data security and data breach notification provisions in protective orders and noting that "one party's attempt to introduce requirements pertaining to data security into protective orders is often met with reluctance from the opposing party.  This is especially true in cases where one party will be producing vast amounts of confidential information while its opponent will have a limited production, and therefore less to lose if there is a data breach … This reluctance is a mistake. . . ")

to address any potential disclosure.

AliveCor disputes each of these requirements. As to (1), AliveCor would not agree to have a written policy or procedure or even to use the most recent version of an ISMS, vaguely asserting it would be burdensome to do so. AliveCor would only agree to use "a" version of the specified ISMS. In other words, it would be possible to comply with AliveCor's proposed data security provision with a wholly outdated version of the specified ISMS (e.g., the 2005 version of the NIST Special Publication 800-53). AliveCor's proposal exposes both parties' data to unreasonable risks, especially given that using the most up-to-date techniques is crucial to protecting data and the evolving strategies cyber attackers use.[7] AliveCor rejected (2) (multi-factor authentication, "MFA") entirely, even though MFA is a simple measure that has been called the single "most important thing Americans can do to stay safe online."[8] AliveCor refused to agree to (3), the procedures addressing a breach, because it believes that Section 17 of the protective order, regarding inadvertent disclosure of confidential information, suffices in the event of a data breach. Ex. 1 (Section 17). It does not. The inadvertent disclosure of protective order information (e.g., an email addressed to the wrong person) can generally be addressed with a request to delete the information. That procedure, however, is woefully inadequate to address a data breach caused by a malicious actor, which can require far more affirmative steps to retrieve the information and to remedy the breach.

Apple goes to great lengths to protect its customers' personal data, its partners' business information shared in confidence, and Apple's own trade secrets and other sensitive information. Discovery in this case will require the parties to produce highly confidential technical information, including source code, documents describing technical details of Apple's and AliveCor's products, and confidential financial information. Public disclosure of this information would result in competitive harm to Apple. *Apple, Inc. v. Samsung Elecs. Co.*, No. 11–CV–01846–LHK, 2012 WL 6115623, at *2 (N.D. Cal. Dec. 10, 2012) ("Confidential source code clearly meets the definition of a trade secret.");

---

[7] https://blog.checkpoint.com/research/global-cyberattacks-continue-to-rise/

[8] https://www.cisa.gov/news-events/news/next-level-mfa-fido-authentication

*Bayside Solutions, Inc. v. Avila*, No. 21-cv-08738, 2022 WL 3215010, at *2 (finding "disclosure of its trade secrets and confidential business information to defendants could result in competitive harm"). AliveCor recognizes as much through its agreement that a protective order is necessary in this case, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Apple's proposed data-security provision is necessary to ensure that this highly sensitive information remains secure from malicious actors. It also consistent with provisions entered in other cases and applies equally to both parties. Apple's proposed protective order should be entered.

## II.   LEGAL STANDARDS

Upon a showing of "good cause," the Court may order "that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(7). "For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted." *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002). "The law [] gives district courts broad latitude to grant protective orders to prevent disclosure of materials for many types of information, including, *but not limited to*, trade secrets or other confidential research, development, or commercial information." *Phillips*, 307 F.3d at 1211.

## III.   ARGUMENT

Discovery in this case calls for production of Apple and AliveCor source code and confidential technical documentation, and both parties' financial information. That information is highly sensitive and confidential to the respective parties, and its public disclosure would cause competitive harm. The parties agree that a protective order is necessary to safeguard the highly confidential and sensitive information that will be produced in this case. The parties also agree on all the terms necessary to do so, except with respect to the provision on data security. Apple's proposed data security provision requires that the parties use up-to-date protocols for protecting the information produced in this case, and sets forth a straightforward process to follow should a data breach occur. Good cause exists to include Apple's proposed data security provision in the protective order, because it ensures the confidential

information produced in this case will be adequately protected from data breaches and malicious actors, who pose a significant and growing threat. *See* § I, *supra*. AliveCor's opposition to this provision is unsupported.

*First*, Apple proposes that the parties implement an ISMS "to safeguard Protected Materials, including reasonable and appropriate administrative, physical, and technical safeguards, and network security and encryption technologies governed by written policies and procedures" that comply with "at least one of the then-current versions" of three specified standards or other "widely recognized industry or government framework." Ex. 1 (Section 18). Requiring both parties to maintain Protected Materials on systems that employ widely utilized security standards is more than reasonable and is consistent with similar provisions included in other protective orders.[9]

AliveCor agrees the parties should maintain confidential data in an ISMS that complies with one of the same three standards or "a widely recognized industry or government framework," but it would not agree to an ISMS "governed by written policies and procedures" or that the ISMS should be "of the then current versions." *See* Ex. 1 at 25–26. While AliveCor claimed that this provision would be burdensome, it did not say why. Having a written policy for implementing the ISMS required by the PO ensures that relevant individuals will be educated on the procedures and that the procedures will be implemented uniformly. In addition, because malicious actors constantly seek to exploit weaknesses in security systems, the most recent standards should be used to protect the data the parties are housing in this case. Indeed, under AliveCor's proposal a party could store the opposing party's Protected Material on systems that employed an outdated security standard with publicly known flaws that had been previously employed by cyber attackers and which could be easily employed by other cyber attackers as a known means of attack. Permitting use of outdated standards would effectively nullify the data-security provision because it would permit easy use of known exploits. Apple's proposal should be adopted.

*Second*, AliveCor objects to using encryption and multi-factor authentication (MFA) to protect

---

[9] *See* n. 1, *supra*, identifying similar provisions in other protective orders.

the data when it is sent outside the ISMS, e.g., from a party to an expert, because of some unspecified burden. When data is sent outside a party's ISMS, it may be vulnerable to exposure while in transit from one location to another. AliveCor's proposal (do nothing) would leave the same data that is securely housed in an ISMS unprotected when it is sent elsewhere. Apple's proposal, by contrast, mitigates against that risk by requiring encryption and MFA. Encryption "ensures effective security where information cannot be intercepted"[10] and "is a free or low cost solution to protect unauthorized access to data."[11] "MFA is a layered approach to securing your online accounts and the data they contain."[12] "Users who enable MFA are significantly less likely to get hacked … [b]ecause even if a malicious cyber actor compromises one factor (like your password), they will be unable to meet the second authentication requirement, which ultimately stops them from gaining access to your accounts."[13] MFA is one of the top means to prevent unauthorized access to materials.[14] Apple's proposal should be adopted.

*Finally*, AliveCor objects to Apple's proposal regarding the steps to be taken in the event of a data breach. Its only basis for objecting is that the protective order includes a separate provision (Section 17) that governs the inadvertent disclosure of confidential information. Ex. 1 (Section 17). But Section 17 is largely intended to address inadvertent disclosure (*e.g.* emails accidentally sent to the wrong person, or a brief unauthorized access), which can generally be remedied when the unauthorized recipient complies with a request to delete the inadvertently sent information. A data breach by a potential malicious actor, however, is generally an intentional act and likely to differ in breadth and

---

[10]   *See* https://www.cisa.gov/safecom/encryption (last visited September 25, 2023).

[11]   *See* https://www.americanbar.org/groups/law_practice/publications/techreport/2022/cybersecurity/ (last visited September 25, 2023) (noting that the majority of law firms already employ encryption, particularly large law firms like those representing the parties here)

[12]   https://www.cisa.gov/MFA (last visited September 25, 2023).

[13]   *Id.*

[14]   *See* https://www.cisa.gov/news-events/cybersecurity-advisories/aa22-137a (last visited September 25, 2023) ("MFA is a critical tool in mitigating malicious cyber activity.")

1  scope than an inadvertent disclosure. In those circumstances, the party whose material was potentially
2  exposed is entitled to know as quickly as possible about the exposure (within 48 hours), and to know
3  specific details the size, scope, and potential reoccurrence of the exposure so it can attempt to mitigate
4  any damage. Moreover, ██████████████████████████
5  ████████████████████████████████████████
6  ████████████████████████████████████████
7  ██████████████████████████████████  ████████
8  ████████████████████████████████████████
9  ████████████████████████████████████████
10 ████████████████████████████████████████
11 ███████████████████████  ████████████████
12 ████████████████████████████████████████
13 ████████████████████████████████████████
14 ████████████████████████  A Court order requiring specific actions a party must take is
15 necessary to align the parties' incentives. Apple's proposal addresses this by providing specific actions
16 the parties should take, including notification of the breach, cooperation in determining the extent of
17 breach, and cooperation in addressing the breach. Ex. 1 (Section 18). Given the unique nature of data
18 breaches, the parties would benefit from a clearly delineated list of actions that the parties should take in
19 the event of such a breach, and Apple's proposal should be adopted.

20 **IV.   CONCLUSION**

21      For the foregoing reasons, Apple respectfully requests that the Court enter the proposed
22 Protective Order Regarding Disclosure and Use of Discovery Materials, attached as Exhibit 1 to the
23 Declaration of Gregory Polins filed in support of this motion.

APPLE'S MEM. OF POINTS AND AUTHORITIES
ISO MOTION FOR ENTRY OF PROTECTIVE          7                    CASE NO. 22-CV-07608-HSG
ORDER

DATED: November 6, 2023　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　KIRKLAND & ELLIS LLP

　　　　　　　　　　　　　　　　　　　　 */s/ Gregory Polins*
　　　　　　　　　　　　　　　　　　　　Adam Alper (SBN: 196834)
　　　　　　　　　　　　　　　　　　　　adam.alper@kirkland.com
　　　　　　　　　　　　　　　　　　　　Akshay S. Deoras (SBN: 301962)
　　　　　　　　　　　　　　　　　　　　akshay.deoras@kirkland.com
　　　　　　　　　　　　　　　　　　　　KIRKLAND & ELLIS LLP
　　　　　　　　　　　　　　　　　　　　555 California Street
　　　　　　　　　　　　　　　　　　　　San Francisco, CA 94104
　　　　　　　　　　　　　　　　　　　　Telephone:　(415) 439-1400
　　　　　　　　　　　　　　　　　　　　Facsimile:　(415) 439-1500

　　　　　　　　　　　　　　　　　　　　Michael W. De Vries (SBN: 211001)
　　　　　　　　　　　　　　　　　　　　michael.devries@kirkland.com
　　　　　　　　　　　　　　　　　　　　KIRKLAND & ELLIS LLP
　　　　　　　　　　　　　　　　　　　　555 South Flower Street
　　　　　　　　　　　　　　　　　　　　Los Angeles, CA 90071
　　　　　　　　　　　　　　　　　　　　Telephone:　(213) 680-8400
　　　　　　　　　　　　　　　　　　　　Facsimile:　(213) 680-8500

　　　　　　　　　　　　　　　　　　　　Gregory Polins (pro hac vice)
　　　　　　　　　　　　　　　　　　　　greg.polins@kirkland.com
　　　　　　　　　　　　　　　　　　　　KIRKLAND & ELLIS LLP
　　　　　　　　　　　　　　　　　　　　300 N. LaSalle Dr.
　　　　　　　　　　　　　　　　　　　　Chicago, IL 60654
　　　　　　　　　　　　　　　　　　　　Telephone:　(312) 862-2000
　　　　　　　　　　　　　　　　　　　　Facsimile:　(312) 862-2200

　　　　　　　　　　　　　　　　　　　　Leslie M. Schmidt (*pro hac vice*)
　　　　　　　　　　　　　　　　　　　　leslie.schmidt@kirkland.com
　　　　　　　　　　　　　　　　　　　　KIRKLAND & ELLIS LLP
　　　　　　　　　　　　　　　　　　　　601 Lexington Avenue
　　　　　　　　　　　　　　　　　　　　New York, NY 10022
　　　　　　　　　　　　　　　　　　　　Telephone:　(212) 446-4800
　　　　　　　　　　　　　　　　　　　　Facsimile:　(212) 446-4900

　　　　　　　　　　　　　　　　　　　　Kat Li (*pro hac vice*)
　　　　　　　　　　　　　　　　　　　　kat.li@kirkland.com
　　　　　　　　　　　　　　　　　　　　KIRKLAND & ELLIS LLP
　　　　　　　　　　　　　　　　　　　　401 Congress Avenue
　　　　　　　　　　　　　　　　　　　　Austin, TX 78701
　　　　　　　　　　　　　　　　　　　　Telephone:　(512) 678-9100
　　　　　　　　　　　　　　　　　　　　Facsimile:　(512) 678-9101

　　　　　　　　　　　　　　　　　　　　*Attorneys for Plaintiff Apple Inc.*