# EXHIBIT A

No. 25-1600

---

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

---

AliveCor, Inc.

*Appellant*

v.

Apple Inc.

*Appellee*

---

Appeals from the United States Patent and Trademark Office,
Patent Trial and Appeal Board, in No. IPR2023-00950

---

**RESPONSE BRIEF OF APPELLEE APPLE INC.**

---

Jaysen S. Chung
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
(415) 393-8271

Nathaniel R. Scharn
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, CA 92612
(949) 451-3800

Brian A. Rosenthal, *Principal Attorney*
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
(212) 351-2339

Julia G. Tabat
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
(214) 698-3465

*Counsel for Appellee Apple Inc.*

# REPRESENTATIVE PATENT CLAIM AT ISSUE

**U.S. Patent No. 10,076,257 – Claim 1**

1. An electronic device for detecting a user's cardiac signal, comprising:

an enclosure;

a heart sensor configured to detect the user's cardiac signal, the heart sensor comprising:

> a first lead comprising a first pad that is embedded in a first portion of the enclosure, wherein an exterior surface of the enclosure comprises an exterior surface of the first portion, wherein the first pad is positioned underneath the exterior surface of the first portion, and wherein the first pad is configured to detect a first electrical signal of the user's cardiac signal via the user's skin's contact with the exterior surface of the first portion of the enclosure; and

> a second lead comprising a second pad that is embedded in a second portion of the enclosure, wherein the second pad is configured to detect a second electrical signal of the user's cardiac signal via the user's skin's contact with at least one of the second pad and the second portion of the enclosure; and

> a processor coupled to the heart sensor and configured to receive and process the detected cardiac signal, wherein the first lead further comprises a first connector coupled to the first pad and configured to provide the first electrical signal detected by the first pad to the processor, and wherein the second lead further comprises a second connector coupled to the second pad and configured to provide the second electrical signal detected by the second pad to the processor.

FORM 9. Certificate of Interest

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---|---|
| **Case Number** | 25-1600 |
| **Short Case Caption** | AliveCor, Inc. v. Apple Inc. |
| **Filing Party/Entity** | Apple Inc. |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 10/23/2025

Signature: /s/ Brian A. Rosenthal

Name: Brian A. Rosenthal

FORM 9. Certificate of Interest

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☑ None/Not Applicable |
| Apple Inc. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐    Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable              ☐ Additional pages attached

| | | |
|---|---|---|
| W. Karl Renner<br>Fish & Richardson P.C. | Jeremy Monaldo<br>Fish & Richardson P.C. | Grace Kim<br>Fish & Richardson P.C. |
| Andrew B. Patrick<br>Fish & Richardson P.C. | Patrick J. Bisenius<br>Fish & Richardson P.C. | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below)    ☐ No    ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable              ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................1

ISSUES PRESENTED..........................................................................3

STATEMENT OF THE CASE..............................................................4

I.    The '257 Patent..........................................................................4

      A.    Background of the Technology and Invention....................4

      B.    The Claims.......................................................................7

II.   *Inter Partes* Review Proceedings .............................................8

      A.    AliveCor's Petition.........................................................8

      B.    Apple's Patent Owner Response ......................................10

      C.    AliveCor's Reply...........................................................16

      D.    Apple's Sur-Reply..........................................................17

III.  The Board's Final Written Decision............................................18

      A.    The Board's Construction of the "Positioned Underneath"
            Limitation .....................................................................18

      B.    The Board's Rejection of AliveCor's Obviousness Grounds.............19

SUMMARY OF THE ARGUMENT .......................................................26

STANDARD OF REVIEW ...................................................................29

ARGUMENT .......................................................................................30

I.    The Board Did Not Violate the Administrative Procedure Act, and Did
      Not Change the Prior Art Reference Considered in AliveCor's Ground 2
      ..........................................................................................30

      A.    The Board Addressed U.S. Nissilä in Assessing Ground 2, and Did
            Not Err by Relying on Additional Evidence in Reaching Its
            Ultimate Determination....................................................30

      B.    AliveCor Had Notice of and an Opportunity to Respond to
            Apple's Arguments Related to Finnish Nissilä...................36

II.   Substantial Evidence Supports the Board's Judgment That AliveCor
      Failed to Prove That Markel and U.S. Nissilä Render Claims 1-14
      Obvious..........................................................................39

i

Case 4:21-cv-03530-HSG Document 116 Page: 7 Filed 06/23/2025

**TABLE OF CONTENTS** *(continued)*

A.    Substantial Evidence Supports the Board's Judgment That U.S. Nissilä Does Not Teach a "First Pad" That Is a Separate Structure From the "Exterior Surface of the First Portion of the Enclosure".....41

B.    Substantial Evidence Supports the Board's Alternative Finding That U.S. Nissilä Does Not Teach a "First Pad" That Is "Underneath" the "Exterior Surface of the First Portion of the Enclosure" ...........................................................................................61

C.    AliveCor Has Not Established a Motivation to Combine Markel and U.S. Nissilä, and Has Forfeited Any Such Argument for the "Embedded In" Claim Limitations......................................................71

CONCLUSION .......................................................................................72

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AliveCor, Inc. v. Apple Inc.*,
130 F.4th 1006 (Fed. Cir. 2025) .................................................................29

*Arthrex, Inc. v. Smith & Nephew, Inc.*,
935 F.3d 1319 (Fed. Cir. 2019) .................................................................38

*In re Chapman*,
595 F.3d 1330 (Fed. Cir. 2010) .................................................................29

*In re Chudik*,
851 F.3d 1365 (Fed. Cir. 2017) .................................................................40

*Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.*,
800 F.3d 1375 (Fed. Cir. 2015) .................................................................39

*Eli Lilly & Co. v. Teva Pharms. Int'l GmbH*,
8 F.4th 1331 (Fed. Cir. 2021) ....................................... 30, 40, 48, 61, 62, 67, 70

*Fanduel, Inc. v. Interactive Games LLC*,
966 F.3d 1334 (Fed. Cir. 2020) .................................................................34

*Glob. Health Sols. LLC v. Selner*,
148 F.4th 1363 (Fed. Cir. 2025) .................................................................29

*In re Google Tech. Holdings LLC*,
980 F.3d 858 (Fed. Cir. 2020) .................................................................41

*Homeland Housewares v. Whirlpool Corp.*,
865 F.3d 1372 (Fed. Cir. 2017) ...........................................................49, 68

*HTC Corp. v. Cellular Commc'ns Equip., LLC*,
877 F.3d 1361 (Fed. Cir. 2017) ...........................................................29, 30

*Icon Health & Fitness, Inc. v. Strava, Inc.*,
849 F.3d 1034 (Fed. Cir. 2017) .................................................................59

*In re Jolley*,
308 F.3d 1317 (Fed. Cir. 2002) .................................................................51

*Koninklijke Philips N.V. v. Google LLC*,
948 F.3d 1330 (Fed. Cir. 2020) ........................................................... 35

*In re LF Centennial Ltd.*,
654 F. App'x 491 (Fed. Cir. 2016) ................................................. 59, 60

*In re Magnum Oil Tools International, Ltd.*,
829 F.3d 1364 (Fed. Cir. 2016) ........................................................... 37

*Medtronic, Inc. v. Teleflex Innovations S.à.r.l.*,
69 F.4th 1341 (Fed. Cir. 2023) ..................................................... 51, 67

*Microsoft Corp. v. Biscotti, Inc.*,
878 F.3d 1052 (Fed. Cir. 2017) ............................................. 39, 48, 70

*In re NuVasive, Inc.*,
841 F.3d 966 (Fed. Cir. 2016) ...................................................... 36, 38

*Quanergy Sys., Inc. v. Velodyne Lidar USA, Inc.*,
24 F.4th 1406 (Fed. Cir. 2022) ........................................................... 72

*Randall Mfg. v. Rea*,
733 F.3d 1355 (Fed. Cir. 2013) ........................................................... 29

*Redline Detection, LLC v. Star Envirotech, Inc.*,
811 F.3d 435 (Fed. Cir. 2015) ............................................................. 34

*SAS Inst., Inc. v. Iancu*,
584 U.S. 357 (2018) ............................................................................. 35

*Sirona Dental Sys. GmbH v. Institut Straumann AG*,
892 F.3d 1349 (Fed. Cir. 2018) ........................................................... 35

*St. Jude Med., LLC v. Snyders Heart Valve LLC*,
977 F.3d 1232 (Fed. Cir. 2020) ........................................................... 71

*In re Watts*,
354 F.3d 1362 (Fed. Cir. 2004) ........................................................... 29

*ZyXEL Commc'ns Corp. v. UNM Rainforest Innovations*,
107 F.4th 1368 (Fed. Cir. 2024) ......................................................... 29

iv

**Statutes**

5 U.S.C. § 706 ........................................................................................................29

35 U.S.C. § 311 ......................................................................................................35

35 U.S.C. § 316 ................................................................................................36, 39

35 U.S.C. § 318 ......................................................................................................35

**Regulations**

37 C.F.R. § 42.64 ...................................................................................................32

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, Appellee Apple Inc. identifies the following case that is currently pending before the U.S. District Court for the Northern District of California and may be directly affected by this Court's decision in the pending appeal: *Apple Inc. v. AliveCor, Inc.*, No. 4:22-cv-07608-HSG (N.D. Cal.).

## INTRODUCTION

Before the Board in this case was the parties' factual dispute over what a prior art reference, the U.S. Nissilä patent, discloses.  The Board resolved that dispute in Apple's favor, holding that AliveCor failed to meet its burden of proof and accepting Apple's evidence and argument as to what the reference discloses.  Substantial evidence supports that decision.  The Board's judgment should be affirmed.

Claims 1-14 of Apple's U.S. Patent No. 10,076,257 at issue in this appeal relate to a novel heart sensor that is integrated with an electronic device, such as a cell phone.  The claims require that the sensor has a particular configuration of components.  Relevant here, the sensor must have:  (1) a "first pad" that allows for the detection and transfer of cardiac signals for processing, where (2) the pad is embedded in and "positioned underneath" the "exterior surface of the first portion" of the electronic device's "enclosure" that makes contact with a "user's skin."  There is no dispute that, as the Board held, in claims 1-14, the "first pad is recognized as a *distinct* structure or component from a first portion of an enclosure" and "the pad is positioned underneath that first portion in a manner such that the pad is concealed from a user."

The Board held that AliveCor failed to meet its burden of proof for its argument that U.S. Nissilä's electrodes 118 and 122 (the alleged "first pad") are a *distinct* structure from membrane 119 (the alleged "exterior surface of the first

portion of the enclosure") and that the electrodes are "positioned underneath" the membrane. The parties' arguments before the Board focused largely on what each contended Nissilä's Figure 5 shows. The Board ultimately rejected AliveCor's annotations to Figure 5 in favor of Apple's understanding, and credited Apple's additional rebuttal evidence and argument. The Board found that a skilled artisan would have understood that Nissilä's electrodes are not a separate structure from the membrane. The Board also held in the alternative that even if Nissilä's membrane were a separate structure from the electrodes, the electrodes are not *underneath* the portion of the membrane *that contacts the user's skin*, and thus could not meet the claim.

On appeal, AliveCor's lead argument is that the Board violated the Administrative Procedure Act (APA) by failing to analyze U.S. Nissilä, instead swapping it with the related Finnish Nissilä patent. A straightforward reading of the Board's decision establishes that this assertion is flatly untrue. In addition to considering U.S. Nissilä, which formed the basis for AliveCor's ground at issue in this appeal, the Board assessed Apple's additional evidence and argument, including Finnish Nissilä. But there is no basis in the record to say that the Board substituted Finnish Nissilä for U.S. Nissilä in AliveCor's ground. Instead of addressing the merits of the Finnish reference, AliveCor merely told the Board that it should not consider the evidence. In resolving the parties' dispute over what U.S. Nissilä's

Figure 5 disclosed to a skilled artisan, the Board was entitled to consider (among other evidence) how Finnish Nissilä clarified any ambiguity in the configuration of components in Figure 5.  There is no statutory or evidentiary prohibition on the Board's consideration of such evidence, and AliveCor had notice of Finnish Nissilä and an opportunity to respond to it.  None of this comes close to an APA violation.

AliveCor's remaining arguments on appeal amount to no more than a disagreement with the Board's factual determinations in resolving the parties' dispute about what U.S. Nissilä discloses.  AliveCor argues the Board should have credited AliveCor's evidence and argument that the membrane and electrodes are separate structures and that the electrodes are underneath the membrane, rather than Apple's evidence that they are the *same* structure and that the electrodes are *not* underneath the membrane.  AliveCor's attempt to now reargue the evidence in this Court stops well short of establishing that the Board's findings were not supported by substantial evidence.  The record amply supports the Board's determination.  The Board's judgment therefore should be affirmed.

## ISSUES PRESENTED

I.     Whether the Board complied with the Administrative Procedure Act by considering Apple's rebuttal evidence, which included evidence beyond the prior art references that formed the basis for AliveCor's obviousness theory, such as a Finnish family member of one of those prior art references.

3

**II.**     Whether substantial evidence supports the Board's judgment that AliveCor failed to meet its burden to show that the combination of the Markel and U.S. Nissilä prior art references do not render obvious claims 1-14 of the '257 patent, specifically:

      **A.**     That U.S. Nissilä does not disclose a "first pad" that is a separate structure from the "exterior surface of the first portion of the enclosure," as the claims require.

      **B.**     That, even if U.S. Nissilä discloses a "first pad" that is a separate structure from the "exterior surface of the first portion of the enclosure," what AliveCor identified as the "first pad" still does not satisfy the claim elements requiring the pad to be "positioned underneath" the "exterior surface of the first portion of the enclosure."

## STATEMENT OF THE CASE

This appeal arises from the Board's judgment that AliveCor did not meet its burden to show that claims 1-14 of Apple's U.S. Patent No. 10,076,257 were obvious over U.S. Patent Publication No. 2007/0021677 ("Markel") alone or in view of U.S. Patent No. 6,775,566 (the "U.S. Nissilä patent" or "U.S. Nissilä").  Appx1-60.

**I.     The '257 Patent**

**A.     Background of the Technology and Invention**

The '257 patent is directed to a novel heart sensor that is "seamlessly

integrated" with an electronic device, *e.g.*, a cell phone.  Appx64, Abstract; Appx72 (2:7-19).  The sensor "include[s] one or more leads connected to the exterior of the electronic device," and a "user may contact one or more of the leads to provide an electric signal associated with the user's heart" (*i.e.*, cardiac signal) to the sensor. Appx74 (6:6-10).  To "ensure that sufficient contact is made between the user (e.g., the user's hand or finger) and the leads" for signal detection, each lead can "include a pad...on the outer or inner surface of [the] electronic device['s]" enclosure. Appx74 (6:25-31).  That pad "can then be coupled to a wire or other connector for providing cardiac signals to a processor for processing."  Appx74 (6:31-33).  Thus, the leads detect a user's cardiac signal upon user contact and the signal is sent to a processor that "analyze[s]" the signal.  Appx74 (6:10-16).

Figure 3 (below) depicts one embodiment of this invention, where electronic device 300 has a "display 302," "bezel 310" (*i.e.*, the rim securing and surrounding the device's housing) and "[l]eads 322 and 324."  Appx75 (8:10-39); Appx74 (6:33-35).  The leads "can include conductive pads, [and] can be coupled to sides 312 and 314 of bezel 310, respectively, such that when the user holds the device, the user's thumb and fingers are placed in contact with" both leads.  Appx75 (8:20-24).



FIG. 3

Appx68 (Fig. 3).

Furthermore, Figures 4A and 4B (below) depict two non-limiting examples of how the leads may be integrated with the electronic device. In Figure 4A, "lead 422" is "embedded along the outer surface of bezel 410 such that lead 422 is exposed to the user during use." Appx76 (9:18-24). Figure 4B shows a configuration where: (1) "lead 472 of the heart sensor can be positioned against the back surface of bezel 460"; or (2) "[a]lternatively, lead 472 can be placed within the thickness of bezel 460 (e.g., in a pocket within the bezel wall), but underneath the outer surface of the bezel." Appx76 (9:36-48).

6



FIG. 4A                                                      FIG. 4B

Appx69 (Figs. 4A, 4B).  In both figures, the lead (422 in Figure 4A and 472 in Figure

4B) is coupled to a connector that "transmit[s] the signals" to the processor.  Appx76

(9:24-26); Appx76 (9:51-52).

### B.    The Claims

Claims 1-14 of the '257 patent, which are at issue in this appeal, require a

particular configuration of the leads and the electronic device:  a "heart sensor" that

includes a "first lead comprising a first pad"; a "second lead comprising a second

pad"; a "processor coupled to the heart sensor"; and a "first connector" and "second

connector" coupled to the first and second pads, respectively.  Appx77 (12:21-49).

This appeal focuses on the three below claim requirements that pertain to the

configuration of the "first lead" comprising the "first pad" relative to the "exterior

surface" of the electronic device:

> [1.c.i.] a first lead comprising a first pad that is embedded in a
> first portion of the enclosure, [1.c.ii] wherein an exterior surface
> of the enclosure comprises an exterior surface of the first
> portion, [1.c.iii] wherein *the first pad is positioned underneath*

7

> *the exterior surface of the first portion, and wherein the first*
> *pad is configured to detect a first electrical signal of the user's*
> *cardiac signal via the user's skin's contact with the exterior*
> *surface of the first portion of the enclosure[.]*

Appx77 (12:26-34) (emphasis and alterations added). The claims also include

corresponding limitations for the "second pad":

> [1.d.i] a second lead comprising a second pad that is embedded
> in a second portion of the enclosure, [1.d.ii] wherein the second
> pad is configured to detect a second electrical signal of the
> user's cardiac signal via the user's skin's contact with at least
> one of the second pad and the second portion of the enclosure;

Appx77 (12:35-40). As indicated above, the "second pad" does not require that the

pad be "positioned underneath" the exterior surface of the first portion, but requires

that it be "embedded in" a second portion of the enclosure. *Id.*

## II.   *Inter Partes* Review Proceedings

### A.   AliveCor's Petition

AliveCor filed a petition requesting *inter partes* review ("IPR"), raising three

obviousness grounds:

- Ground 1:  obviousness as to claims 1-22 over Markel;

- Ground 2:  obviousness as to claims 1-22 over Markel in view of U.S.
  Nissilä; and

- Ground 3:  obviousness as to claims 12-13 and 19 over Markel in view of
  Righter.

8

Appx156.  Only Ground 2 is at issue in this appeal, although the arguments related to Markel in Ground 1 are also relevant to Ground 2.

AliveCor described Markel as disclosing a "general-purpose mobile communication device, general-purpose computer user-interface device, and other non-health-related electronic devices with cardiovascular monitoring capability." Appx162 (emphasis omitted).  AliveCor argued that Markel renders obvious element [1.c.iii], "wherein the first pad is positioned underneath the exterior surface of the first portion [of an enclosure], and wherein the first pad is configured to detect a first electrical signal of the user's cardiac signal via the user's skin's contact with the exterior surface of the first portion of the enclosure." Appx171-176.  AliveCor stated that Markel "teaches that an electrode 'may be substantially concealed (or hidden) from a user…with little or no visible indication of the electrode presence'" because, in Markel, the electrode *is* the plastic surface material.  Appx174-75 (citing Appx1794 ([0040]); Appx1599-1600 (¶ 135)) (emphasis omitted).

As to Ground 2, AliveCor argued that if "a POSITA sought additional detail on how to implement Markel's 'hidden' electrode, that POSITA would have turned to [U.S. Nissilä]," which AliveCor stated "expressly teaches a cross-sectional view of an 'improved electrode structure' having a pad that is positioned underneath the exterior surface of an enclosure." Appx226 (citing Appx1813 (Fig. 5); Appx1816 (2:17-20); Appx1682-83 (¶ 357)) (emphasis omitted).  AliveCor contended that U.S.

9

Nissilä discloses a "second electrode 122" and "a 'membrane 119' that 'is made of metal, electrically conductive plastic or a similar conductive material.'" Appx226-27 (citing Appx1818 (5:6-9, 5:32-37); Appx1683-84 (¶ 358)). According to AliveCor, U.S. Nissilä's "electrode pad is *underneath* the 'membrane 119.'" Appx227. AliveCor provided an annotated version of U.S. Nissilä's Figure 5, purporting to outline the membrane and electrode pad:



*Id.* AliveCor concluded that a "POSITA would thus have been motivated to implement [U.S.] Nissilä's electrode structure in" Markel's device as, according to AliveCor, such a configuration "would have accomplished Markel's stated goal of a 'hidden' electrode." Appx228 (emphasis omitted).

In January 2024, the Board instituted review. Appx386-441.

## B. Apple's Patent Owner Response

In its Patent Owner Response (Appx499-583), Apple argued that "***none*** of the references relied upon by AliveCor disclose a first pad that is 'positioned

**underneath** the exterior surface of [a] first portion' of an enclosure of a device," as the claims require. Appx504. Instead, Apple pointed out, "the alleged 'first pad' in both Markel and U.S. Nissilä is positioned **on** the exterior of a device." *Id.*

As to Markel, Apple explained that the disclosed "electrodes are formed from a 'molded conductive plastic' that ensures 'little or no visible indication of the electrode presence' at the surface." Appx505-06 (citing Appx1794 ([0040]); Appx525-40. As to U.S. Nissilä, Apple stated that there is "no disclosure…to support AliveCor's assertion that Nissilä's electrodes 118 and 122 are either positioned 'underneath' or 'enclosed by' a separate membrane, or that Nissila discloses a conductive pad positioned underneath an exterior facing electrode." Appx506-07; Appx542-62. Apple explained that, as with Markel, the exterior surface of the device in Nissilä, specifically "Nissilä's 'membrane 119[,]' **is** the electrode." Appx507. Apple further illustrated that AliveCor's annotations of Nissilä's figures were inaccurate, and were "not based on the actual disclosures of Nissilä, but rather use[d] the claims of the '257 Patent as a guide for labeling structures that are simply not present in Nissilä." *Id.* That is, in the altered version of Figure 5 presented in AliveCor's petition, "AliveCor has drawn an **additional layer** that is **not present in the actual FIG. 5 of Nissilä** and for which there is no support in the specification of Nissilä." Appx543.

11

Further, Apple clarified that, rather than disclosing an electrode *underneath* an exterior surface, U.S. Nissilä's Figures 4 and 5 show that the electrodes (118 and 122) are on the exterior surface of the device "so as to allow for direct contact with a user's skin":



Appx507; *see also* Appx1813 (Figs. 4 & 5). Apple noted that, "[a]s shown in the cross-section of the embodiment of FIG. 4 [*i.e.*, FIG. 5 (*see* Appx1817 (4:35-41))], the reference numeral 119 is pointing to the electrode 118, 122 and not a separate membrane structure surrounding or enclosing the electrode 118, 122." Appx522. That is, "the membrane **_is_** the material that makes up the electrodes, not a separate material that encloses the electrodes." Appx546.



FIG.5

Appx522-23.

Given this quality of the image in U.S. Nissilä and the potential difficulty in determining exactly what the reference line for numeral 119 points to, Apple cross-referenced the Finnish patent that issued from the application to which Nissilä claims priority, FI Patent No. 119716B ("the Finnish Nissilä patent" or "Finnish Nissilä"), which Apple stated "demonstrate[s] even more clearly" that "numeral 119 is pointing to the electrodes 118, 122," such that the electrodes 118, 122 themselves "'consist of' the membrane 119":



FIG.5

APPLE-2006, FIG. 5.

13

Appx523; Appx3286 (Fig. 5); Appx551-52.  Apple also discussed a translation of Finnish Nissilä that stated: "[T]he first electrode and the second electrode of the electrode structure **are formed of** an electrically conductive film."  Appx552 (citing Appx3270 (7:4-8, 7:14-17)).

In addition, referring back to U.S. Nissilä, Apple observed that the reference also states that "[b]ecause the inner surface 116 of the electrode structure 100 is the portion which is against the person's skin, **the electrodes 118, 122 are preferably <u>located on</u> the inner surface 116 of the band 101**."  Appx554 (citing Appx1818 (5:50-59); Appx1817 (3:41-44)).  Apple also showed that, even accepting AliveCor's argument that U.S. Nissilä's membrane 119 is a separate component from the electrodes 118, 122, according to the discussion in the reference, the membrane would not be "positioned between the electrodes 118, 122 and the user's skin," such that the electrodes 118, 122 would be underneath the exterior surface of the device.  Appx558.  That is, U.S. Nissilä teaches that its "electrodes 118, 122 are preferably **<u>located on</u> the inner surface 116** of the band 101":



Membrane 119 on inner
surface 116 (under
AliveCor's incorrect
reading of Nissilä)

Appx559 (citing Appx1818 (5:50-53)).

Finally, Apple explained that a skilled artisan would not have combined Markel and U.S. Nissilä because U.S. Nissilä's visible electrodes would "hinder Markel's goal of making the electrode 'substantially concealed (or hidden) from a user…with little or no visible indication of electrode presence.'" Appx562-63 (citing Appx1794 ([0040]); Appx3215-17 (¶¶ 140-41)). Apple stated that, in contrast to Markel, U.S. Nissilä "intentionally makes its electrodes visually distinct from the surrounding portions of the device." Appx563-64. Apple further noted that "***Markel already achieves its stated goal*** of making the electrode 'substantially concealed (or hidden) from a user…with little or no visible indication of electrode presence' by forming the external electrode from 'molded conductive plastic.'" Appx566 (citing Appx1794 ([0040]); Appx3524-25 (170:9-171:3) (AliveCor's

15

expert agreeing a skilled artisan would not have needed to modify Markel because Markel already discloses how to visually conceal an electrode)).

### C.    AliveCor's Reply

In its Reply, AliveCor stated that "the parties appear to agree the first portion of the enclosure and the first pad cannot be met by the same structure."  Appx650.

As to U.S. Nissilä, AliveCor urged the Board to "credit AliveCor's proper characterization of Nissilä," and that Nissilä states that "membrane 119 comes 'into contact with the person's skin surface.'"  Appx659-60 (citing Appx1818 (5:40-41); Appx557) (emphasis omitted).  AliveCor further argued that the use of different numerals for the membrane and electrodes "demonstrates the identified structures are distinct."  Appx661.  As to Figure 4, which shows that the electrode pads 118, 122 are visible (*i.e.*, not underneath a membrane), AliveCor argued the figure is not intended to illustrate membrane 119, "which is why numeral '119' is absent."  Appx664.

As to Finnish Nissilä, AliveCor's argument was limited to a single footnote, in which it contended the reference was irrelevant because AliveCor did not rely on it in its petition, and that the "Board should decline to 'depart from the petition' and consider 'a different *inter partes* review' from the one AliveCor filed."  Appx662 n.7 (citation omitted).  AliveCor did not address how Finnish Nissilä would have informed a skilled artisan's understanding of U.S. Nissilä if the Board indeed

considered Finnish Nissilä relevant to that question. Nor did AliveCor formally seek to exclude the relevant exhibits or challenge the accuracy of the translation or Apple's statements about the contents of Finnish Nissilä.

Finally, as to motivation to combine, AliveCor argued that both Markel and U.S. Nissilä contemplate electrode pads that are not visible. Appx665-66. AliveCor relied on its own characterization of U.S. Nissilä for this argument, contending the electrode pads are "under the membrane." Appx665.

### D. Apple's Sur-Reply

In its Sur-Reply (Appx714-48), Apple responded by highlighting again that U.S. Nissilä explains "electrodes 118, 122 of the electrode structure 100 ***consist of a membrane 119***," such that the membrane is not a separate structure that the electrodes could be underneath. Appx738 (citing Appx1817 (3:18-40); Appx1818 (5:25-38)). Thus, Apple explained, "AliveCor's assertion that membrane 119 comes into contact with the person's skin surface is entirely consistent with [U.S.] Nissilä's disclosure that each of the electrodes 118, 122 *is* a membrane 119." Appx739 (cleaned up). As to AliveCor's argument that the use of different numerals indicated different structures, Apple explained that U.S. Nissilä, on several occasions, uses multiple numerals to point to the same structure. Appx739-42.

## III.    The Board's Final Written Decision

In its Final Written Decision, the Board held that AliveCor had not proven that claims 1-14 are unpatentable as obvious.[1]  Appx1-60.

### A.    The Board's Construction of the "Positioned Underneath" Limitation

Relevant to this appeal, the Board construed the "positioned underneath" limitation ([1.c.iii]) at AliveCor's request.  Appx17-19.

The Board first noted AliveCor had "not articulate[d] a singular, cogent statement as to what specifically constitutes the proposed 'correct interpretation'" of limitation [1.c.iii].  Appx17.  The Board then stated that, nevertheless, it "was able to discern the contours of that interpretation" from AliveCor's petition.  Appx17-18 (citing Appx174-76).    Specifically, the Board held that AliveCor's proposed interpretation:  (1) requires that the first "pad be positioned 'underneath' another component or structure, i.e., 'the exterior surface of the first portion' of the enclosure"; and (2) "does not encompass a surface of a pad that is on, or part of, an exterior surface that is visible to a user."  Appx18; *see also* Appx174-76; Appx1599-1600 (¶ 135).  Apple agreed that this limitation requires the pad and enclosure to be separate structures.  Appx18-19 (citing Appx513-15; Appx3150-51 (¶ 37)); *see also*

---

[1]  The Board also found that AliveCor had demonstrated claims 15-22 were unpatentable based on Markel alone.  Appx58.  Claims 15-22 do not include the "positioned underneath" limitation and are not at issue on appeal.

Appx650 ("[T]he parties appear to agree the first portion of the enclosure and the first pad cannot be met by the same structure.").

The Board construed the "positioned underneath" limitation as requiring that (1) "a first pad is recognized as a *distinct* structure or component from a first portion of an enclosure," and (2) "that the pad is positioned underneath that first portion in a manner such that the pad is concealed from a user."  Appx19 (emphasis added). AliveCor does not challenge the Board's interpretation on appeal.

## B.    The Board's Rejection of AliveCor's Obviousness Grounds

The Board held that AliveCor failed to establish that claims 1-14 would have been obvious over (1) Markel alone (Ground 1) and (2) Markel in view of U.S. Nissilä (Ground 2).    Appx19-34 (Markel); Appx41-55 (Markel and Nissilä). AliveCor appeals the Board's judgment only with respect to Ground 2.  Br. 15 n.5.

The Board stated that AliveCor was "explicit" in its petition that, under AliveCor's Ground 2, U.S. Nissilä meets the "positioned underneath" limitation by disclosing, with respect to Figure 5, that its "membrane 119" both "extend[s] underneath, and also surround[s], electrodes 118 and 122."  Appx51-52 (citing Appx226-28; Appx1683-84 (¶ 358)).   The Board addressed the particular configuration of U.S. Nissilä's Figure 5 (as annotated by AliveCor) on which AliveCor relied:



Appx227; *see* Appx51-52, Appx43-44. AliveCor contended that membrane 119 met the "exterior surface" aspects of the "embedded in" and "positioned underneath" limitations, and electrode pads 118 and 122 met the "pad" part of these limitations. Appx43-44 (citing Appx227; Appx1683-84 (¶ 358)).

The Board found that AliveCor's annotations and descriptions of U.S. Nissilä's Figure 5 were wrong. Appx51-55. Specifically, the Board concluded that Apple "presented credible evidence that casts significant aspersions" on AliveCor's "representations as to what is reasonably conveyed to a skilled artisan" by "the structure and configuration of Nissilä's membrane 119." Appx54. The Board held that AliveCor failed to demonstrate that a skilled artisan would have been motivated to implement AliveCor's "particular configuration" of Nissilä into Markel's electronic device "so as to facilitate the electrode concealment that Markel desires, but in a manner not contemplated by Markel." Appx54.

20

### 1. The Board Found That U.S. Nissilä Does Not Disclose a "First Pad" That is a "Distinct Structure or Component From a First Portion of an Enclosure"

The Board first noted that the "record is not a model of clarity," and that Nissilä's "structural makeup and configuration of the membrane…remains decidedly uncertain." Appx51. The Board then found that AliveCor's Nissilä configuration argument "appears fabricated in an attempt to reach the claims of the '257 patent rather than serving as a faithful adherence to what Nissilä would have relayed to a skilled artisan." Appx52-53. The Board explained that, contrary to AliveCor's assertion, Nissilä "does not, itself, reasonably show or describe that its membrane 119 takes on any distinct structural characteristics of its own, much less the particular, and seemingly intricate, configuration of extending along the entire lower surface of the electrode structure shown in Figure 5." Appx52. Instead, the Board "credit[ed] [Apple's expert[]]" and found that "the record at hand is simply inadequate to convey that the proposed green lines presented by" AliveCor accurately reflect "what Nissilä would have relayed to a skilled artisan." Appx52-53 (citing, *e.g.*, Appx553; Appx3189-92 (¶¶ 103-05); Appx3203-04 (¶ 121); Appx3205 (¶ 123)).

Furthermore, the Board held that "Nissilä's disclosure[s]," as well as Apple's "other evidence," contemplate a *single* structure for *both* the membrane and the electrodes, rather than two distinct components. Appx52-53. The Board also found

21

that Apple provided a "rational explanation *with citation to Nissilä's disclosure*" (*i.e.*, Nissilä itself, rather than its corresponding Finnish patent) that Nissilä "does not adhere to any approach that different reference characters must identify different structures," and instead "suggests that membrane 119, at times, is also used to identify electrodes 118 and 122"—that is, the membrane and electrodes are referred to as a single structure. Appx53 (citing Appx545-47; Appx739-42) (emphasis added). The Board additionally found that Apple "point[ed] to *other record evidence* including the Finnish patent [] and the testimony of [its expert]" to "provid[e] support for a view that Nissilä's membrane 119 [in Figure 5] identifies electrodes 118 and 122" (*i.e.*, that the membrane and electrodes are a single structure) "rather than forming a layer that covers surfaces [of] those electrodes" (*i.e.*, that the membrane and electrode are structures distinct from each other). *Id.* (citing Appx545-47; Appx550-55; Appx739-42; Appx3195-3205 (¶¶ 110-23)) (emphasis added).

### 2. The Board Found, in the Alternative, That U.S. Nissilä Does Not Disclose a "First Pad" That Is "Positioned Underneath" the "First Portion" of an "Enclosure" and "Concealed from a User"

The Board held that, in the alternative, Apple and its expert "present[ed] plausible explanation that, even if membrane 119" in U.S. Nissilä's Figure 5 "is a distinct structure, its arrangement with respect to electrodes 118 and 122 would be

one that does not cover any surface of those electrodes that contacts a user's skin."

Appx53-54 (citing, *e.g.*, Appx557-559; Appx3207-08 (¶¶ 127-28); Appx45-51).

Accordingly, the Board explained, this disclosure would not satisfy the elements of

claim 1[c], including the requirement that the pad (here, the electrode) detect an

electrical signal "via the user's skin contact with the exterior surface of the first

portion of the enclosure" (here, the membrane). *See id.*; *see also* Appx9-10 (claim

language). Specifically, the Board credited Apple's expert that—under AliveCor's

interpretation of U.S. Nissilä—the green lines in Figure 5 would need to be redrawn

in one of the following configurations:





Membrane 119 on inner
surface 116 (under
AliveCor's incorrect
reading of Nissilä)

Appx50 (citing Appx557; Appx559).[2]  The Board found that "[s]uch configurations seemingly also distance [AliveCor's] proposed ground from being viewed reasonably as accounting for limitations [1.c.i], [1.c.ii,], and [1.c.iii]," which collectively require the separate pad structure to be both "embedded in" and "positioned underneath" the separate "first portion" of the exterior surface that contacts the user's skin.  Appx53-54.

---

[2] The Board's reproduction of these figures cites to the "Petition," rather than to the "Patent Owner Response."  Appx50.  It is apparent that this is a typo and the Board correctly attributed these annotations to Apple because the Board's citations correspond to the correct page numbers of the Patent Owner Response, and are included within its "Summary of Patent Owner's Arguments" (Appx45).  *Compare*, *e.g.*, Appx209 (Petition at 54) *with* Appx557 (Patent Owner Response at 54).

Thus, in light of Apple's "credible evidence" as to what Nissilä "reasonably convey[s] to a skilled artisan," the Board held that AliveCor failed to carry its burden to show that (1) membrane 119 is a "*separate and distinct structure* from electrodes 118 and 122," and (2) membrane 119 is "specifically one that encloses those electrodes in the manner on which [AliveCor] relie[d]." Appx54 (citing Appx226-32). The Board then concluded that its findings with respect to Nissilä "serve[] to challenge the propriety of the motivation to combine Markel and Nissilä…so as to facilitate the electrode concealment that Markel desires, but in a manner not contemplated by Markel." Appx54 (citing Appx224-26; Appx228; Appx231).

### 3. The Board Additionally Found That the Deficiencies in AliveCor's Arguments Applied Equally to the "Second Pad" Claim Limitations

Finally, the Board noted that although its determination focused on the [1c] limitations discussed above, AliveCor "relie[d] on [a] similar assessment of the teachings of Nissilä in attempting to account for additional limitations of claim 1 (*e.g.*, limitations [1.d.1] and [1.d.ii])." Appx54 n.18. The Board held that the "deficiencies" of AliveCor's argument for the [1c] limitations was "also applicable to those additional limitations" concerning the "second pad." *Id.*

25

Thus, the Board held that AliveCor failed to meet its burden to show claims 1-14 would have been unpatentable in view of Nissilä and Markel. Appx54-55.[3]

## SUMMARY OF THE ARGUMENT

Substantial evidence supports the Board's judgment that AliveCor failed to prove claims 1-14 of the '257 patent are unpatentable. On appeal, AliveCor accuses the Board of violating the APA, but the record readily shows that AliveCor's accusations are untrue. AliveCor also contends the Board erred in assessing U.S. Nissilä. AliveCor, however, merely reargues the evidence that the Board considered in resolving the parties' factual dispute about what the reference discloses.

I.     The Board did not violate the APA. *First*, contrary to AliveCor's assertion, the Board did not swap Finnish Nissilä for U.S. Nissilä, which formed the basis for AliveCor's Ground 2. A plain reading of the Board's decision establishes that the Board relied on Finnish Nissilä, among other evidence and argument, as an additional basis to reach its determination that AliveCor failed to show the Markel-U.S. Nissilä combination rendered the claims obvious. *Second*, AliveCor cannot deny that it had notice of and a full opportunity to respond to Apple's rebuttal arguments and expert testimony concerning Finnish Nissilä. Nor can AliveCor

---

[3] The Board also denied Apple's contingent motion to amend as moot, finding that "the condition for assessing the Revised Contingent Motion to Amend has not materialized," specifically, none of claims 3 and/or 11-14 were found unpatentable. Appx57.

seriously dispute that Apple was entitled to present this rebuttal evidence and the Board was entitled to consider it—among the other record evidence—to reach its ultimate determination on Ground 2. Thus, AliveCor has no conceivable basis to contend the Board violated the APA here.

**II.** Substantial evidence supports the Board's judgment that AliveCor failed to meet its burden to prove that Markel and U.S. Nissilä render claims 1-14 of the '257 patent obvious.

**A.** The Board did not err in holding that U.S. Nissilä does not clearly teach a separate membrane that both surrounds and covers the electrode (the alleged "pad") in the manner AliveCor argued met the claims. In reaching this determination, the Board characterized AliveCor's interpretation of U.S. Nissilä's Figure 5 as a "fabricated" attempt to map Nissilä onto the '257 patent claims, rather than adhere to what the reference actually shows. The Board also credited Apple and its expert in holding that both the language and the figures in U.S. Nissilä indicate the electrodes are *made from* the membrane and constitute a *single* structure. Substantial evidence supports the Board's findings, and AliveCor has identified no legally cognizable reason to disturb them.

**B.** The Board also did not err in its alternative holding that, even if the membrane and the electrodes *were* separate structures, there is no separate teaching in U.S. Nissilä indicating that the membrane would both cover and surround the

electrodes in the manner specified by AliveCor, such that the reference would teach a "pad" "embedded in" and "positioned underneath" the exterior surface of the first portion of the enclosure that is in contact with the user's skin. The Court need not reach this alternative finding if it agrees with Apple that AliveCor failed to meet its burden to show the membrane and electrodes are separate structures. If the Court does reach this issue, however, the Board's findings were again supported by substantial evidence, including the credible testimony of Apple's expert and the disclosures in U.S. Nissilä itself.

C.    Finally, AliveCor argues that this Court should "reverse" the Board's finding that there would have been no motivation to combine U.S. Nissilä with Markel to render claims 1-14 obvious. But AliveCor failed to challenge the Board's finding that U.S. Nissilä's electrode (the alleged "pad") is not "embedded in" the alleged first portion of the enclosure. That finding was central to the Board's judgment on the lack of motivation to combine Markel and U.S. Nissilä. Thus, AliveCor has forfeited any argument that there would have been a motivation to combine the references. At a minimum, this question requires remand for the Board to make findings as to whether the claims would have been obvious if Nissilä teaches limitation [1.c.iii].

## STANDARD OF REVIEW

Although this Court reviews the Board's compliance with the Administrative Procedure Act (APA) de novo, the Board's "action[s], findings, and conclusions" should be set aside only if they are "found to be…arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," "made 'without observance of procedure required by law,'" or "unsupported by substantial evidence." *AliveCor, Inc. v. Apple Inc.*, 130 F.4th 1006, 1014 (Fed. Cir. 2025) (quoting 5 U.S.C. § 706(2)). In addition, "[t]he judicial review provision of the APA includes a harmless error rule." *ZyXEL Commc'ns Corp. v. UNM Rainforest Innovations*, 107 F.4th 1368, 1382 (Fed. Cir. 2024) (quoting *In re Chapman*, 595 F.3d 1330, 1338 (Fed. Cir. 2010)); *see also* 5 U.S.C. § 706 ("[D]ue account shall be taken of the rule of prejudicial error.").  "Thus, to prevail" on appeal, an "appellant must not only show the existence of error, but also show that the error was in fact harmful because it affected the decision below." *Glob. Health Sols. LLC v. Selner*, 148 F.4th 1363, 1370 (Fed. Cir. 2025) (quoting *In re Watts*, 354 F.3d 1362, 1369 (Fed. Cir. 2004)).

Furthermore, "[o]bviousness is a question of law with underlying factual findings relating to the 'scope and content of the prior art, differences between the prior art and the claims at issue, the level of ordinary skill in the pertinent art, and any objective indicia of non-obviousness.'" *HTC Corp. v. Cellular Commc'ns Equip., LLC*, 877 F.3d 1361, 1369 (Fed. Cir. 2017) (quoting *Randall Mfg. v. Rea*,

733 F.3d 1355, 1362 (Fed. Cir. 2013)).  This Court reviews "underlying factual findings for substantial evidence and its legal conclusion on obviousness de novo." *Id.*  "Ultimately, what a piece of prior art teaches presents a question of fact that is reviewed for substantial evidence."  *Eli Lilly & Co. v. Teva Pharms. Int'l GmbH*, 8 F.4th 1331, 1347 (Fed. Cir. 2021).  "Under this deferential standard of review," this Court "cannot replace the Board's reasonable interpretation of references with a different interpretation that [the appealing party] would prefer."  *Id.*  Thus, "[a] finding is supported by substantial evidence if a reasonable mind might accept the evidence as adequate to support the finding."  *Id.* at 1339.

## ARGUMENT

### I. The Board Did Not Violate the Administrative Procedure Act, and Did Not Change the Prior Art Reference Considered in AliveCor's Ground 2

AliveCor accuses the Board of relying on Finnish Nissilä instead of "just analyzing" U.S. Nissilä that formed the basis of AliveCor's Ground 2.  Br. 28-34. As detailed below, AliveCor's argument fails in two particular respects.

#### A. The Board Addressed U.S. Nissilä in Assessing Ground 2, and Did Not Err by Relying on Additional Evidence in Reaching Its Ultimate Determination

1. AliveCor's APA argument is factually wrong because, contrary to AliveCor's assertion (Br. 28-34), the Board did not swap U.S. Nissilä with Finnish Nissilä.  Instead, the Board relied on Finnish Nissilä among other evidence and

30

argument—and was entitled to do so—as an additional basis for its holding that AliveCor failed to prove unpatentability based on U.S. Nissilä.

On appeal, AliveCor asserts that "[i]n analyzing claims 1–14 under AliveCor's Ground 2..., the Board never directly cites a single disclosure in Nissilä (the U.S. patent presented by AliveCor)." Br. 31. This is highly misleading. The Board's discussion focuses closely on what U.S. Nissilä shows, principally by addressing the parties' arguments and evidence (*e.g.*, expert testimony) about the reference rather than citing directly to the reference itself. Appx51-55.

The relevant question before the Board was whether AliveCor proved that U.S. Nissilä's electrodes (the alleged "pad" of the claims) are (a) *underneath* a membrane structure that is (b) *separate* from the electrodes (the alleged "first portion of an enclosure" of the claims). Appx51-55. The Board's analysis begins at page 41 of its decision, opening with a detailed discussion of U.S. Nissilä (AliveCor's Exhibit 1006 (Appx1810-20)), including direct citations to that reference. Appx41-42. The Board identified the reference's key disclosure that is pertinent here: "The electrodes 118, 122 of electrode structure 100 consist of membrane 119." Appx42. The Board then examined both parties' arguments concerning the reference, including those about how a skilled artisan would have understood the configuration of the relevant embodiment as depicted in its Figure 5. Appx42-51. The Board even expressly considered—and later rejected (Appx51-53)—AliveCor's arguments

31

about U.S. Nissilä's Figure 5, to which AliveCor had applied its own annotations to support what it believed U.S. Nissilä shows.  Appx43-45.

Next, the Board decided whether AliveCor met its burden of proving what it argued U.S. Nissilä discloses.  Identifying the central factual dispute over the reference, the Board first observed that the "record is not a model of clarity in ascertaining just what [U.S.] Nissilä conveys as to the structural configuration of membrane 119, and its relationship vis-à-vis electrodes 118 and 122." Appx51.  The Board then proceeded to resolve that dispute, considering the parties' arguments and evidence, including AliveCor's arguments and its expert's testimony about the reference's membrane 119.  *See, e.g.*, Appx51-52 (citing Appx226-28 (AliveCor's petition argument about membrane 119, including its annotated figures); Appx1683-84 (¶ 358) (expert testimony about membrane 119 and AliveCor's annotated figures)).

In addition to its assessment of U.S. Nissilä, the Board considered "other record evidence," including—in a *single citation*—Apple's arguments based on Finnish Nissilä.[4]  Appx53 (citing Appx557-59 (Patent Owner Response); Appx739-42 (Patent Owner Sur-Reply); Appx3195-3205 (¶¶ 110-23) (Apple's expert's testimony); Appx3241-63 (Finnish Nissilä); Appx3264-88 (English translation of

---

[4] Notably, AliveCor never objected to Finnish Nissilä or the translation thereof with a motion to exclude (*see* 37 C.F.R. § 42.64), nor did it object to the translation itself.

Finnish Nissilä)).  Apple's argument was *not* that Finnish Nissilä should be substituted for U.S. Nissilä in AliveCor's Ground 2.  Appx506-07; Appx542-562.  Rather, Apple contended that Finnish Nissilä's figures and translated language corroborates what U.S. Nissilä says:  membrane 119 is the *same* structure as—and *not* separate from—the electrodes 118, 122.  Appx506-07; Appx542-562.

Ultimately, the Board agreed with Apple and rejected AliveCor's arguments about U.S. Nissilä, finding "inadequate the evidentiary basis for [AliveCor]'s proposal that Nissilä's membrane 119 is properly regarded as being a separate and distinct structure…and specifically one that encloses those electrodes in the manner on which Petitioner relies."  Appx54; *see also* Appx52 ("[I]t is quite tenuous on this record to conclude with any level of certainty that [AliveCor] and [its expert] accurately advance a view of the arrangement and positioning of membrane 119 that would have emerged from Nissilä's disclosure.").  Thus, the Board made factual findings about U.S. Nissilä as presented in AliveCor's Ground 2.  The Board did not, as AliveCor argues, substitute that reference for Finnish Nissilä.

**2.**     None of AliveCor's cited case law establishes that the Board's consideration of Apple's responsive arguments and evidence, including Finnish Nissilä, violated the APA or otherwise falls outside of the Board's statutory mandate.  Nor does AliveCor's cited case law somehow restrict Apple from having presented those responsive arguments and evidence.

The Board's job was to determine the facts and apply the law. "In every case" on *inter partes* review (IPR), "it remains the Board's essential function to make factual findings based on its view of the record." *Fanduel, Inc. v. Interactive Games LLC*, 966 F.3d 1334, 1344 (Fed. Cir. 2020); *Redline Detection, LLC v. Star Envirotech, Inc.*, 811 F.3d 435, 451 (Fed. Cir. 2015) ("Based on the record before it, the PTAB determined what each reference taught and determined whether a PHOSITA would have been motivated to combine these references. Substantial evidence supports the PTAB's factual findings."). As explained, that is precisely what the Board did here: "make factual findings based on its view of the record" as to which party was correct about what U.S. Nissilä discloses, including an assessment of the parties' additional evidence and argument, *e.g.*, Finnish Nissilä.

AliveCor cites various case law to argue that the Board somehow stepped beyond the bounds of its "essential function" by referring to the Finnish Nissilä patent. Br. 28-34. As an initial matter, for the reasons discussed above, AliveCor's assertion rests on a flatly incorrect factual premise—specifically, that the Board's analysis substituted Finnish Nissilä for U.S. Nissilä that formed the basis for Ground 2. In any event, AliveCor's cited cases do not apply here, as none restricts Apple from presenting evidence rebutting AliveCor's arguments.

For example, AliveCor cites *SAS Institute* to argue that the Board may not "'depart from the petition' and consider 'a different inter partes review' from the one

34

filed." Br. 28 (citing *SAS Inst., Inc. v. Iancu*, 584 U.S. 357, 365 (2018)). But the holding of *SAS Institute*, rooted in the statutory language of 35 U.S.C. §§ 311 and 318, was that the Director must issue a final written decision as to every challenged claim for an instituted IPR petition, and may not decide to institute as to only certain claims or grounds. 584 U.S. at 362-64. That holding is not at issue here. It certainly does not create an evidentiary straitjacket that prevents the patent owner from presenting and the Board from considering evidence and argument showing that the petitioner's arguments are incorrect—as was the case here.

AliveCor next cites *Sirona Dental Sys. GmbH v. Institut Straumann AG* for the premise that "[a]n inter partes review must proceed in accordance with or in conformance to the petition." Br. 28 (quoting 892 F.3d 1349, 1356 (Fed. Cir. 2018)). *Sirona* likewise does not limit the Board's ability to consider the patent owner's evidence. 892 F.3d at 1356. Rather, *Sirona* held that the Board did *not* deviate from the grounds in the petition by merely discussing terminology from a prior art reference that was not expressly discussed in the petition. *Id.* In addition, AliveCor relies on *Koninklijke Philips N.V. v. Google LLC*, 948 F.3d 1330, 1336 (Fed. Cir. 2020), for a similar assertion that the Board may not institute an IPR on a combination of references not presented in a petition. Br. 29. But that case also does not apply to the circumstances here or otherwise limit Apple's ability to present rebuttal evidence.

35

Taken to its logical extreme, AliveCor's position is that a patent owner violates the APA if it introduces evidence , including to clarify the scope and content of the prior art, that was not part of the petition in response to a petition.  But the statutory framework governing IPRs makes clear that is not the standard.  For instance, Section 316(a)(8) expressly provides for "filing by the patent owner of a response to the petition…after an inter partes review has been instituted," including "*additional factual evidence* and expert opinions on which the patent owner relies in support of the response." 35 U.S.C. § 316(a)(8) (emphasis added).  Thus, the statute itself makes clear that the evidentiary record is not limited to the petition.

Accordingly, AliveCor's APA argument entirely fails both because (1) its factual premise is wrong (*i.e.*, the Board did not swap AliveCor's chosen U.S. version of Nissilä for the Finnish version), and (2) Apple was entitled to present— and the Board was entitled to consider—rebuttal evidence.

### B.    AliveCor Had Notice of and an Opportunity to Respond to Apple's Arguments Related to Finnish Nissilä

AliveCor indisputably had notice of Apple's argument related to Finnish Nissilä and an opportunity to respond it.  That is what is "required by the APA and due process," and thus there is no conceivable APA violation.  *In re NuVasive, Inc.*, 841 F.3d 966, 971 (Fed. Cir. 2016).  Indeed, AliveCor *did* briefly address Finnish Nissilä in its Petitioner Reply.  It chose to argue only that the Board should not

consider it, and—tellingly—opted *not* to address what it showed about U.S. Nissilä that was the basis of ground 2. Appx662 n.7. AliveCor's miscalculation—declining to respond on the merits—does not give rise to an APA violation.

AliveCor cites several cases to support its argument that an APA violation occurred, but none applies here. Each concerns only whether parties received notice of and had an opportunity to respond to the arguments that formed the basis of the Board's decision. For instance, citing *In re Magnum Oil Tools International, Ltd.*, 829 F.3d 1364, 1380-81 (Fed. Cir. 2016), AliveCor argues the Board may not "rel[y] on an obviousness ground that included a base reference not properly within the scope of the petition." Br. 33. As discussed, AliveCor's factual premise is incorrect. *Supra* pp. 30-36. Here, the Board did not rely on Finnish Nissilä as a "base reference," but as evidence that undercut AliveCor's arguments about what U.S. Nissilä demonstrated to a skilled artisan. Appx506-07; Appx542-562. By contrast, in *Magnum Tools*, the Board based its decision on an obviousness argument no party had ever made. 829 F.3d at 1380-81. As the Court held there, "the Board must base its decision on arguments that were advanced by a party, *and to which the opposing party was given a chance to respond*." *Id.* (emphasis added). Here, unlike in *Magnum Tools*, the arguments in question were conspicuously raised by Apple, and AliveCor had the opportunity to respond to them—but chose not to.

37

In addition, AliveCor relies on *NuVasive* for the premise that the Board could not rely "on a figure within a reference where the figure was not cited in the petition." Br. 33-34 (citing 841 F.3d at 971, 975). As with *Magnum Tools*, however, the APA issue in *NuVasive* was whether the patent owner had notice of and an opportunity to respond to the argument in question. *Id.* at 971-72 ("There is no dispute that NuVasive's Patent Owner Response was an adequate opportunity to respond if Medtronic's petition put NuVasive on notice of the assertion about Figure 18.") (emphasis omitted). Considering two petitions, the Court in *NuVasive* found no APA violation as to the first, where the figure in question was cited and "notice was at least minimally sufficient." *Id.* at 972. But the Court found an APA violation in the second petition, where the figure was not cited or discussed until the petitioner's reply, and the patent owner's request to file a sur-reply was denied. *Id.* at 972-73. Here, in contrast, there is no question that AliveCor had notice of and an opportunity to respond to Apple's arguments about Finnish Nissilä. AliveCor simply disagrees with the Board's factual conclusions.

Finally, AliveCor's reliance on *Arthrex, Inc. v. Smith & Nephew, Inc.* (Br. 32-33), is similarly misplaced, as the case likewise recognizes that the APA requires that parties receive "notice and an opportunity to address" arguments the Board ultimately relies on. 935 F.3d 1319, 1327-28 (Fed. Cir. 2019). There, the Court observed that "the Board properly relied on the same references, the same

38

disclosures, and the same obviousness theories advanced by the petition and debated by the parties," such that there was no APA violation. *Id.*

Accordingly, at least because AliveCor had notice of and an opportunity to respond to Apple's arguments based on Finnish Nissilä, the Board did not violate the APA by ultimately agreeing with those arguments.

## II. Substantial Evidence Supports the Board's Judgment That AliveCor Failed to Prove That Markel and U.S. Nissilä Render Claims 1-14 Obvious

It was AliveCor's burden to "show[] by a 'preponderance of the evidence' that claim[s] 1[-14] [are] unpatentable over Markel and [U.S.] Nissilä." Appx54-55 (citing *Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.*, 800 F.3d 1375, 1378 (Fed. Cir. 2015); 35 U.S.C. § 316(e)). The Board held that AliveCor had not met this burden as to limitations [1.c.i], [1.c.ii], and [1.c.iii] (and corresponding limitations [1.d.i]-[1.d.iii]), and therefore had not shown claims 1-14 to be unpatentable. Appx42 n.14; Appx54-55; *id.* n.18.

The crux of AliveCor's argument before the Board was that U.S. Nissilä discloses a configuration of a device with electrodes underneath a membrane. Appx227. As the Board determined, however, that is not actually what U.S. Nissilä discloses. Appx51-55. Where, as here, the Board supports its opinion with substantial evidence in the record, "however 'close' certain factual questions may have been before the Board," it "cannot be a close case on appeal." *Microsoft Corp.*

*v. Biscotti, Inc.*, 878 F.3d 1052, 1072-73 (Fed. Cir. 2017); *Eli Lilly*, 8 F.4th at 1349 (substantial evidence supported Board's findings where the petitioner "failed to demonstrate [with] enough certainty" that claims were obvious) (emphasis omitted).

AliveCor ignores the applicable standard of review and instead reargues points the Board rejected based on the evidence the Board carefully considered. In particular, AliveCor states incorrectly that the Board overlooked "clear and unambiguous" disclosures in U.S. Nissilä showing a separate pad positioned underneath the membrane. Br. 34, 37-38 (citing *In re Chudik*, 851 F.3d 1365, 1371, 1372 (Fed. Cir. 2017)). To the contrary, after considering the evidence AliveCor uses here to reargue the facts together with Apple's evidence, the Board found that Apple "presented credible evidence that casts significant aspersions on [AliveCor]'s representations" that the membrane and electrodes were separate structures, let alone separate structures arranged in the "seemingly intricate" manner proposed by AliveCor. Appx52; Appx54. Such evidence was not limited to the "Finnish family member of Nissilä" (as AliveCor contends, Br. 37), but also included "citation[s] to [U.S.] Nissilä's disclosure[s]" and "other record evidence," including the testimony of Apple's expert. Appx53 (citing Appx545-47; Appx550-55; Appx3195-205 (¶¶ 110-23); Appx739-42).

As addressed in turn below, substantial evidence supports the Board's factual determinations that (1) U.S. Nissilä does not teach a separate structure corresponding

to the claimed "first pad"; (2) even if it did, that separate structure is not surrounded

by or "positioned underneath" an exterior surface (membrane) that contacts the

user's skin; and (3) AliveCor failed to show a motivation to combine Markel and

U.S. Nissilä.[5]   This Court should decline AliveCor's invitation to reweigh the

evidence and thus affirm the Board's judgment.

### A. Substantial Evidence Supports the Board's Judgment That U.S. Nissilä Does Not Teach a "First Pad" That Is a Separate Structure From the "Exterior Surface of the First Portion of the Enclosure"

Substantial evidence supports the Board's factual determination that AliveCor

failed to show that U.S. Nissilä's membrane 119 (the alleged "exterior surface of the

---

[5] AliveCor also suggests the "ordinary meaning" of membrane (Br. 39) and U.S. Nissilä's teaching that the membrane "is physically 'located at' both ends of the electrode structure 100, at the electrode[s] 118 and 122" is "inconsistent with Dr. Kenny's view (and the Board's finding) that membrane 119 'is' electrodes 118 and 122" (Br. 43) (citing Appx1818 (5:35-36)) (emphasis omitted).  AliveCor never raised those arguments before the Board, and thus AliveCor forfeited them.  *In re Google Tech. Holdings LLC*, 980 F.3d 858, 863 (Fed. Cir. 2020) ("We have regularly stated and applied the important principle that a position not presented in the tribunal under review will not be considered on appeal in the absence of exceptional circumstances.").  Regardless, AliveCor fails to elaborate as to how this "ordinary meaning" compels a finding that the membrane is a separate structure from the electrodes, particularly in view of the contrary evidence that the Board considered.  *See* Br. 39.  Likewise, for the reasons discussed below (*infra* pp. 44-46, 51), that the membrane is "located at both ends of the electrode structure, at the electrode[s] 118 and 122," actually supports *Apple's* understanding of U.S. Nissilä's Figure 5.  Thus, AliveCor's arguments that the Board erred in assessing Apple's additional rebuttal evidence either were forfeited or fail.

first portion of the enclosure") is a *separate structure* from the electrodes (the alleged "first pad").[6]  Appx51-53.

### 1. AliveCor Has No Sound Basis to Dispute the Board's Factual Determination That Apple's Understanding of Figure 5 of U.S. Nissilä Was Correct and AliveCor's Assertion Was Wrong

The Board resolved the parties' factual dispute as to what U.S. Nissilä's Figure 5 discloses, finding that AliveCor failed to prove that membrane 119 is a separate structure from electrodes 118 and 122, and that the electrodes are underneath the membrane.  Appx51-53.  Substantial evidence supports the Board's finding, and AliveCor does not identify any error in the Board's judgment.

AliveCor argued in its petition that U.S. Nissilä teaches "an electrode" (the alleged "first pad") "comprising a 'membrane 119'" (the alleged "exterior surface of the first portion") "that 'is made of metal, electrically conductive plastic or a similar material.'"  Appx226-27 (Appx1818 (5:32-37); Appx1683-84 (¶ 358)).  In support of this assertion, AliveCor provided *only* AliveCor's self-serving annotation of U.S. Nissilä's Figure 5 and duplicative expert testimony, characterizing the figure's electrodes 118 and 122 as "embedded in and enclosed by" membrane 119:

---

[6] The Board's decision focused on claim [1.c.iii], but AliveCor's arguments were made with respect to elements [1.c.i], [1.c.ii], and [1.c.iii].  Appx42 n.14 (citing Appx226-29).



Appx227; Appx1683-84 (¶ 358).[7]  Based on these annotations and text boxes,

AliveCor argued (1) that membrane 119 is a structure separate from electrodes 118

and 122, and (2) the membrane and electrodes are arranged in a manner that satisfies

the elements of 1[c], *i.e.*, that the electrodes are underneath the membrane, *and* the

membrane is between the electrodes and the user's skin.  Appx226-28; Appx1682-

86 (¶¶ 356-61).

In response, Apple and its expert explained AliveCor's argument was wrong

and lacked any support in U.S. Nissilä itself, stating:

> "AliveCor's assertions that [U.S.] Nissilä discloses a *separate*
> conductive membrane positioned over the electrodes 118 and 122 are
> based entirely on an altered version of [U.S.] Nissilä's [Figure] 5
> reproduced repeatedly throughout the Petition in which AliveCor has
> drawn an ***additional layer*** that is ***not present in the actual [Figure] 5***

---

[7] As the Board found, the "green lines" are drawn to indicate where AliveCor
contends the "membrane" is located and the "yellow" shading corresponds to the
"'electrode pad' formed from electrodes 118 and 122."  Appx44 (citing Appx1817
(4:40); Appx227; Appx1683-84 (¶ 358)).

*of [U.S.] Nissilä* and for which there is no support in the specification of [U.S.] Nissilä."

Appx543 (citing Appx3189-92 (¶¶ 103-05)) (first emphasis added).  Apple also provided the below comparison between the original, unaltered version of Figure 5 (left) and AliveCor's annotated version (right).  Appx553; Appx49; Appx3189-3192 (¶¶ 103-05); Appx3195-96 (¶ 110); Appx3203-04 (¶ 121); Appx3205 (¶ 123).  This comparison reveals that the green lines drawn by AliveCor do not correspond to any actual structure.  Instead, AliveCor arbitrarily drew these green lines around the electrodes and along the entire surface of the band to "completely fabricate[]" (Appx49 (citing Appx553)) a configuration where the electrodes are embedded in the enclosure and covered by a "first surface" that contacts the user's skin.



In showing that membrane 119 and electrodes 118 and 122 were not distinct structures, Apple relied primarily on the disclosures from U.S. Nissilä itself and also

presented evidence from the related Finnish Nissilä and expert testimony about the disclosures in both references. Appx53 (citing Appx545-47; Appx550-55; Appx739-41; Appx3195-3205 (¶¶ 110-23); Appx3241-3263; Appx3264-3288).

For example, Apple explained that U.S. Nissilä only twice discusses membrane 119. Appx3197-98 (¶¶ 112-13). Apple's expert, Dr. Kenny, testified that, in both instances, Nissilä indicates "that the membrane **_is_** the material that makes up the electrodes," as demonstrated by the reference itself. Appx3197-98 (¶¶ 112-13) (emphasis in original). *First*, U.S. Nissilä states that the "first electrode and the second electrode of the electrode structure *consist of* an electrically conductive membrane." Appx1817 (3:24-27, 3:32-37) (emphasis added). *Second*, it states (while describing Figures 3-6) that "the electrodes 118, 122 of the electrode structure 100 *consist of* a membrane 119 that" (a) "is located at both ends of the electrode structure 100, at the electrode 118, 122, and" (b) "is made of metal, electrically conductive plastic or a similar conductive material." Appx1818 (5:32-39) (emphasis added).

Dr. Kenny testified that a skilled artisan would have understood that the use of "consist of" "describes what a particular component or substance is 'made of'"; "[f]or example, a description that a particular adhesive 'consists of' an epoxy resin would indicate that the adhesive **_is_** an epoxy resin." Appx3198-3200 (¶¶ 114-16) (emphasis in original). Thus, as he explained, a skilled artisan would have

45

understood U.S. Nissilä as teaching that the electrodes are made or formed from a metal, electrically conductive plastic, or similar material that *includes* membrane 119. *Id.* AliveCor's expert did not dispute that the "electrodes" are made of this membrane material, and even relied on Nissilä's same "consisting of" disclosure. Appx3483 (129:10-16). Indeed, Nissilä's description of the membrane material that makes up the electrodes is not unique. In other disclosures, Nissilä similarly describes the materials that make up other particular components. Appx3198-3200 (¶¶ 114-16); Appx1818 (5:20-25) ("the band 101 can be of plastic, textile fibre, a combination thereof or the like"); Appx1818 (5:43-45) ("The adhesive 127 is preferably a conductive glue, such as conductive Solgel or a conductive Silicone glue.").

In addition, the related Finnish Nissilä patent further supports Dr. Kenny's interpretation of U.S. Nissilä. Specifically, Finnish Nissilä twice describes the electrodes as "*formed of* an electrically conductive film," and specifies that the electrically conductive film is "119" in Figure 5 (*i.e.*, the electrically conductive film 119 in the Finnish patent corresponds to membrane 119 in the U.S. patent). Appx3270 (7:4-17) (emphasis added); Appx3274 (11:9-25). Dr. Kenny explained that a skilled artisan would have understood this "formed of" language to mean that the electrically conductive film (or membrane) "is the material used to make the electrodes," and would not have understood the two components to be separate

46

structures.  Appx3202 (¶¶ 119-20).  AliveCor presented no contrary evidence or testimony in reply.  Appx659-65.

After considering both parties' evidence, the Board held that the evidence did not support AliveCor's annotations to Figure 5.  Appx51-53.  The Board first observed that it was "quite tenuous…to conclude with any level of certainty that [AliveCor] and [its expert] Dr. Berger accurately advance[d] a view of the arrangement and positioning of membrane 119 that would have emerged from [U.S.] Nissilä's disclosure."  Appx52.  The Board then held that AliveCor failed to point to anything in U.S. Nissilä "reasonably show[ing] or describ[ing] that its membrane 119 takes on any *distinct structural* characteristics of its own, much less the particular and seemingly intricate configuration...alleged in [AliveCor's] annotated green lining of [] Figure [5]."  Appx52 (citing Appx227) (emphasis added).

The Board thus "agree[d] with [Apple] and credit[ed] [Apple's expert] Dr. Kenny's associated testimony" that "the proposed green lines presented by [AliveCor] and Dr. Berger" "appear[] fabricated in an attempt to reach the claims of the '257 patent rather than serving as a faithful adherence to what Nissilä would have relayed to a skilled artisan."  Appx52-53 (citing Appx553; Appx3189-3192 (¶¶ 103-05); Appx3203-04 (¶ 121); Appx3205 (¶ 123)).  The Board further credited Apple's argument and Dr. Kenny's testimony as providing a "rational explanation" for why the membrane and electrodes are the *same structure* and thus do not satisfy the claim

elements requiring them to be *separate* structures.  Appx45-51; Appx53.  These findings are supported by substantial evidence.

This Court should decline AliveCor's request for this Court to disregard the Board's analysis and reweigh the evidence to find that the membrane and electrodes constitute separate structures in U.S. Nissilä.  *Eli Lilly*, 8 F.4th at 1349 ("Unsurprisingly, Lilly would have preferred that the Board accept its expert's opinion [regarding the prior art,] [b]ut in view of the Board's extensive analysis of the evidence, it is impossible for us to conclude that the Board's finding…is unsupported by substantial evidence"); *Microsoft*, 878 F.3d at 1072-73 ("We do not duplicate the efforts of…the Board, [but] instead provide proper deference…rather than reweigh factual determinations.").

### 2. AliveCor's Arguments About the Evidence Merely Show That AliveCor Disagrees with the Board's Factual Determinations, Not a Lack of Substantial Evidence

On appeal, AliveCor presents three primary arguments quibbling with how the Board weighed the evidence, each of which fails for the reasons detailed below: (a) AliveCor argues that U.S. Nissilä's descriptions of the physical characteristics of the membrane suggest it is a different structure from the electrodes; (b) AliveCor attempts to create confusion surrounding the Board's clear factual findings related to Nissilä's statement that the electrodes "consist of" the membrane; and (c)

AliveCor repeats its argument that the use of different numerals in Nissilä means that the membrane and electrodes are separate structures.

> ### a. U.S. Nissilä's Descriptions of the Physical Characteristics of the Membrane Show That It Is Not a Distinct Structure from the Electrodes

AliveCor contends that three statements about the structural characteristics of U.S. Nissilä's membrane undercut the Board's findings. As explained below, however, the Board examined the record evidence and determined that each of these possible characteristics of Nissilä's membrane may also be characteristics of the electrodes—further corroborating Nissilä's plain statements that the membrane is not a distinct structure from the electrode, but rather that the electrodes may "consist of" a membrane. Appx51-55.

> ### 1. According to AliveCor, the Board's finding that U.S. Nissilä Figure 5's electrodes and membrane are not separate structures is "plainly inconsistent with the record" because "[U.S.] Nissilä is explicit that the membrane 'come[s] into contact with the person's skin surface.'" Br. 39-40 (quoting *Homeland Housewares v. Whirlpool Corp.*, 865 F.3d 1372, 1378 (Fed. Cir. 2017); Appx1818 (5:40-44)). AliveCor thus assumes that because the membrane (the alleged "exterior surface of the first portion of the enclosure") can contact the person's skin surface, the electrodes (the alleged "pad") must be *underneath* it. *Id.* AliveCor argues that the

Board therefore erred in crediting Apple's expert's opinions that the membrane and electrodes are not separate. *Id.*

But there is no inconsistency between what Nissilä states in this passage and Apple's expert's testimony concerning Figure 5. Apple's expert, Dr. Kenny, *agreed* that Nissilä's membrane 119 can make "contact with the person's skin surface" and may have an electrically conductive adhesive. *See* Appx3206 (citing Appx1818 (5:40-44)). But that is because, as he explained, the membrane is the *same structure* as the electrodes 118, 122. Appx3195-3205 (¶¶ 110-23). Thus, his agreement that the membrane can contact the skin simply means that both the membrane and electrodes contact the skin—because they are the *same structure*. Nissilä's statement thus does not mean that the electrode is a *separate structure* from and specifically *underneath* the membrane that contacts the skin, as AliveCor argued to satisfy the relevant claims.

Indeed, in testimony the Board credited (Appx53), Dr. Kenny made clear that nothing about U.S. or Finnish Nissilä (including AliveCor's cited passage): (a) indicates that the membrane is a *separate structure* from the electrodes or (b) suggests that the electrodes (even if they are a separate structure from the membrane, *infra* pp. 61-70) would be embedded in and positioned *underneath* the area of the membrane that contacts the user's skin. Appx3197-3205 (¶¶ 112-23). Thus, the Board's decision to credit Dr. Kenny's interpretation of Figure 5 over that of

AliveCor's expert was not error. *Medtronic, Inc. v. Teleflex Innovations S.à.r.l.*, 69 F.4th 1341, 1352 (Fed. Cir. 2023) ("[T]the Board's decision to credit Teleflex's experts over Medtronic's does not render its finding unsupported by substantial evidence.") (citing *In re Jolley*, 308 F.3d 1317, 1329 (Fed. Cir. 2002)).

2.      AliveCor next suggests that U.S. Nissilä's teaching that the membrane "is physically '*located at*' both ends of the electrode structure 100, *at the electrode[s] 118 and 122*" is "inconsistent with Dr. Kenny's view (and the Board's finding) that membrane 119 'is' electrodes 118 and 122." Br. 43 (emphasis in original). But that statement in Nissilä actually supports *Apple's* understanding of U.S. Nissilä's Figure 5. Namely, this disclosure clearly indicates that membrane 119 is positioned *at* the exact position where the electrode is, rather than indicating the electrodes are *underneath* the membrane. *Supra* pp. 44-46.

3.      AliveCor also relies on U.S. Nissilä's teaching that the membrane is "made of metal, electrically conductive plastic or a similar conductive material," and can be adhered to the user with an "electrically conductive adhesive" in its attempt to dispute the Board's determination that the membrane lacks "unique structural characteristics" and is thus not "different and distinct from the electrodes." Br. 41 (citing Appx1818 (5:33-43)); *see* Appx52.

The record, however, shows that these "structural" characteristics are not unique to the membrane—they also apply to the electrodes, and are therefore

consistent with Apple's argument and Dr. Kenny's opinion that the electrodes and the membrane are the *same structure*. For instance, U.S. Nissilä teaches that "the electrodes located at the ends of the band-like component of the electrode structure *are made of electrically conductive adhesive*." Appx1817 (3:18-23) (emphasis added); Appx1818 (5:25-31); Appx3192-93 (¶ 107). Notably, the reference also states that "*the electrodes 118, 122* of the electrode structure 100 *consist of a membrane 119* that is located at both ends of the electrode structure, *and is made of metal, electrically conductive plastic, or a similar conductive material*." Appx1818 (5:32-39). As Apple's expert explained, a skilled artisan would have understood this disclosure to be a description "of the material used to manufacture the electrodes." Appx3199-3200 (¶ 116). Furthermore, even AliveCor's expert agreed that the *electrodes* (not simply the membrane) are "[m]ade of metal, electrically conductive plastic, or a similar conductive material"—the same materials AliveCor attributes to the membrane as "unique" structural components (Br. 41). Appx3483 (129:10-16).

Thus, AliveCor has identified no reason to overturn the Board's well-supported findings regarding the correct understanding of Figure 5.[8]

---

[8] The Board's findings as to the correct annotation of Figure 5 do *not* rely on Finnish Nissilä, but rather on the figure in U.S. Nissilä itself and the experts' competing interpretations of that figure. Appx52-53 ("We agree with [Apple]…that the record at hand simply is inadequate to convey that the proposed green lines presented by

### b. The Board Based Its Factual Findings That U.S. Nissilä's Electrodes Consist of the Membrane on Record Evidence, Not on Claim Construction Case Law

AliveCor also attempts to create confusion surrounding the Board's clear factual findings related to U.S. Nissilä's statement that the electrodes "consist of" the membrane. Br. 41-43. AliveCor contends the Board (a) first appeared to reject Apple's argument as to the meaning of "consist of" in the reference, but (b) later credited Apple's expert as to the meaning of "consist of" to support the Board's finding that the membrane and electrodes are the same structure. *Id.* AliveCor misstates the Board's findings; there is no inconsistency between them.

Specifically, Apple had argued that U.S. Nissilä's membrane and electrodes are the same structure by relying on claim construction case law distinguishing between (1) an "open" term signified by the words "comprise" or "comprising" (*i.e.*, a term that can include additional elements beyond those that are expressly disclosed) and (2) a "closed" term signified by "consist" or "consisting of" (*i.e.*, a term limited to the listed elements that are expressly disclosed). *E.g.*, Appx549; Appx743; Appx554 (discussing AliveCor's expert's understanding of the use of "consist" versus "comprise" as based on a "misunderstanding of patent law"). In

---

[AliveCor]…serv[e] as a faithful adherence to what Nissilä would have relayed to a skilled artisan.") (citing Appx553; Appx3189-92 (¶¶ 103-05); Appx3203-04 (¶ 121); Appx3205 (¶ 123)).

reaching its ultimate holding that Nissilä's membrane and electrodes are the same structure, however, the Board stated in a footnote that it declined to rely on that case law. Appx46 n.16. Although the Board acknowledged Apple's "contention that 'consist of' or 'consisting of' is language that is presumed to convey a particular understanding in patent law," the Board stated that "such understanding typically arises when the 'consist of' or 'consisting of' terminology appears in a patent claim and is a matter of claim construction." *Id.* (citing Appx549; Appx554; Appx742-44). The Board thus declined to rely on Apple's cited case law to support its ultimate factual findings.

Instead, as discussed, the Board credited Dr. Kenny's testimony as to how a *skilled artisan* reading U.S. Nissilä would have understood "consist of" and "formed of" in ultimately finding that the membrane and electrodes are the same structure. *Supra* pp. 44-48. Dr. Kenny's testimony was not based on Apple's cited case law regarding the "patent law" meaning of "consist of," and thus neither was the Board's finding that relied on his testimony. Thus, there is no internal inconsistency in the Board's findings.

c. **Substantial Evidence Supports the Board's Finding That U.S. Nissilä's Use of Separate Numerals Does Not Indicate That the Membrane and Electrodes Are Separate Structures**

Finally, AliveCor repeats its argument before the Board that membrane 119 and electrodes 118 and 122 must be *separate* structures because U.S. Nissilä uses "different reference numerals" for them. Br. 38 n.12. As explained below, however, substantial evidence supports the Board's rejection of that argument and AliveCor identifies no error in that determination.

**i.** The Board correctly recognized that although the "use of different reference numerals usually demonstrates that identified structures are distinct," Apple provided "rational explanation with citation to [U.S.] Nissilä's disclosure" and to "other record evidence" that "Nissilä does not adhere to any approach that different reference characters must identify separate structures," and instead at times uses membrane 119 to identify electrodes 118 and 122. Appx53 (citing Appx545-47; Appx550-55; Appx739-42; Appx3195-3205 (¶¶ 110-23); Appx3241-63; Appx3264-88). Specifically, Apple explained that U.S. Nissilä: (a) indicates in Figure 5 that membrane 119 and electrodes 118 and 122 are the same structure; (b) discloses that the electrodes are made from the membrane (*supra* pp. 44-48); and (c) in other disclosures, uses different numerals in the figures to point to the same structure for both the membrane and electrodes.

55

As Dr. Kenny testified, Figure 5 of U.S. Nissilä depicts membrane 119 as pointing to the same structure as electrodes 118 and 122:



EX1006, FIG. 5 (annotated)

Appx550-51 ("As shown in FIG. 5, the reference numerals 119, 118, and 122 are all pointing to the same structure, the electrode positioned on the user facing exterior surface of Nissilä's device."); Appx3200-01 (¶¶ 117-18).   In support of this interpretation of the figure, Apple presented the corresponding figure in Finnish Nissilä, which shows the area to which numeral 119 is pointing more clearly:



FIG.5

Appx551-52; Appx3201-02 (¶¶ 118-19); Appx3286 (Fig. 5).  Thus, Apple argued, "[t]he Figures of [U.S.] Nissilä (and the patent [issued from the] application to which it claims priority [*i.e.*, Finnish Nissilä])…confirm the disclosures of the [U.S. Nissilä] specification that the electrodes 118 and 122 are made of or formed of an electrically conductive membrane, not enclosed by a separate membrane." Appx551-52; Appx3200-02 (¶¶ 117-19).

In further support of its argument that U.S. Nissilä uses different numerals to refer to the same structures, Apple explained that in Figures 4 and 6, reference numerals 101, 116, and 127 all point to the same structure, but are identified in the text by different names (the "inner surface 116" of "continuous band 101" having "electrically conductive adhesive 127").  Appx739-40 (citing Appx1813 (Figs. 4 and 6); Appx1818 (5:3-6, 5:40-44)).



FIG.4

Similarly, Figures 7-9 of U.S. Nissilä show reference numerals 116, 127, 101, and 118 all pointing to the same structure:



FIG.7

Appx740-42 (citing Appx1814 (Figs. 7-9)). Thus, as the Board correctly recognized, U.S. Nissilä does not adhere to "any approach that different reference characters must identify different structures." Appx53.

58

ii.     On appeal, AliveCor completely ignores this evidentiary support for the

Board's finding and instead insists that the "Board swept away Nissilä's use of

different reference numerals for the membrane 119 and electrodes 118, 122" in favor

of Apple's "attorney argument" to the contrary.  Br. 38 n.12 (citing *Icon Health &*

*Fitness, Inc. v. Strava, Inc.*, 849 F.3d 1034, 1043-46 (Fed. Cir. 2017)).

AliveCor misstates the record.  The Board expressly noted that it was relying

on Apple's "citation to Nissilä's disclosure" (including Nissilä's use of different

numerals indicating the same structure in Figures 4, 6 and 7-9, *see* Appx53 (citing

"PO Sur-Reply"), which AliveCor does not challenge or mention in its brief) as well

as the "Finnish patent" and the "testimony of Dr. Kenny" to "support" its "view that

Nissilä's membrane 119 identifies electrodes 118 and 122" in Figure 5, "rather than

forming a layer that covers surfaces [of] those electrodes."  Appx53.  In contrast to

this case, the Board in *Icon Health* (AliveCor's cited case) had not "ma[d]e the

necessary findings" to allow the Court "to exercise its duty to review" where the

Board simply stated that its decision "incorporated by reference" an attorney's

comments without reference to the evidentiary record.  849 F.3d at 1042-44

(quotation omitted).

AliveCor's other cited, non-precedential case also fails to overcome the

Board's factual findings.  Br. 40-41 (citing *In re LF Centennial Ltd.*, 654 F. App'x

491, 496 (Fed. Cir. 2016)).  In *LF Centennial*, this Court held that the "specification

plainly distinguishe[d] between the spine and the side panels" of the invention (a television mount) because "[t]he patent figures *show[ed]* the spine as a piece distinct from the side panels *and* assign[ed] those components different figure numbers." 654 F. App'x at 495-96 (emphasis added)  In particular, the Court pointed to Figure 1, which "depict[ed] spine 22 and side panels 48 and 50":



**FIGURE 1**

*Id.* at 493, 495-96 (annotated).  Unlike here, *LF Centennial* involved a figure where the relevant structures were both described as completely separate components and depicted nowhere near each other in the relevant figures.  *Id.*

Based on the figures in U.S. Nissilä and Finnish Nissilä, as well as Dr. Kenny's supporting testimony as to what would be understood by a skilled artisan,

the Board found that U.S. Nissilä's use of different reference numerals did not necessarily connote different structures and that AliveCor had not met its burden to show otherwise. Appx53. This Court should uphold that finding, and therefore affirm the Board's conclusion that AliveCor has not established claims 1-14 would have been obvious. Appx54-55.

### B. Substantial Evidence Supports the Board's Alternative Finding That U.S. Nissilä Does Not Teach a "First Pad" That Is "Underneath" the "Exterior Surface of the First Portion of the Enclosure"

Although the Court does not need to reach the Board's alternative holding as to Ground 2 to affirm the Board's judgment—because affirmance is warranted for the reasons discussed above—substantial evidence supports that alternative holding. Specifically, the Board found that even if U.S. Nissilä's membrane were a separate structure from the electrodes, the electrodes are not *underneath* the portion of the membrane *that contacts the user's skin*, as the claims require.

On appeal, AliveCor again ignores that it had the burden to establish that U.S. Nissilä and Markel render the claims obvious and simply criticizes the Board for crediting Apple's evidence and expert over its own. Furthermore, the U.S. Nissilä passages on which AliveCor relies for its argument (Br. 45-46) do not contradict the Board's findings or Apple's expert testimony. Thus, to the extent the Court reaches this alternative finding, it should affirm. *Eli Lilly*, 8 F.4th at 1347 ("[W]e cannot

61

replace the Board's reasonable interpretation of references with a different interpretation that [appellant] would prefer.").

1.    Even if accepted, AliveCor's interpretation of U.S. Nissilä to teach separate structures for the membrane and the electrodes, fails to show how Nissilä and Markel render claims 1-14 obvious.  Appx53-54; Appx555-62.  Although AliveCor focuses on the "positioned underneath" limitation in its brief, it argued in its Petition that the embodiment depicted in U.S. Nissilä Figure 5 satisfies all three elements in limitation 1[c] (including the requirement that the pad be "embedded in" a first portion of the enclosure).  Appx226-29.  Furthermore, the "positioned underneath" requirement includes a requirement that the "first pad is configured to detect a first electrical signal of the user's cardiac signal *via the user's skin's contact with the exterior surface of the first portion of the enclosure*."  Appx77 (12:26-34) (emphasis added).  AliveCor did not show that—even if the membrane is a separate structure—the remainder of the elements in claim 1[c] are satisfied.

As mentioned, AliveCor's obviousness theory based on U.S. Nissilä relies on the below annotated version of Nissilä's Figure 5.  AliveCor contended it shows that the membrane (119, outlined in green) and the electrode pad (122, shaded in yellow), are distinct components, such that the pad is both "embedded in" and "underneath" the membrane and otherwise satisfies the elements of 1[c], including the requirement

that the electrode detect an electrical signal "via" the user's skin contact with the membrane:



Appx227-28.

Apple responded to AliveCor's interpretation of Figure 5 by pointing out that, even if membrane 119 and electrodes 118 and 122 are separate structures, AliveCor's annotation contradicts U.S. Nissilä's express disclosures regarding the arrangement of membrane 119. Appx555-62. Specifically, the reference numeral 119 (corresponding to the membrane) points to the *top* of 118, 122 (corresponding to the electrodes) in Figure 5, as shown below.



FIG.5

Appx1813 (Fig. 5); Appx556; Appx3205-06 (¶ 125). Apple and Dr. Kenny

explained that, at best, Figure 5 indicates the "separate" membrane structure 119 is

located on the *internal* side of the electrodes 118, 122, rather than on the *exterior*

surface between the electrode and the user's skin, such that the pad would not be

"underneath" an exterior surface and receive an electrical signal "via" that exterior

surface as required by [1.c.iii]. Appx556-57; Appx3205-06 (¶ 125). Apple and Dr.

Kenny illustrated this arrangement below:



*Id.*

It is true, as AliveCor notes (Br. 45-46), that U.S. Nissilä further teaches that membrane 119 can "come into contact with the person's skin surface," which would not be apparent from the annotation above.  Appx1818 (5:40-44).  But what AliveCor omits is that Nissilä's relevant disclosure also states that membrane 119 comes into contact with the person's skin by virtue of its position on "inner surface 116," specifically that "on the inner surface 116 of the membrane 119 which is against the person's skin there can be an electrically conductive adhesive 127."  *Id.* Nissilä thus expressly states that membrane 119 contacts the user's skin by virtue of its location "*on* the inner surface 116," rather than on the electrodes, such that the electrodes would not be configured to detect an electrical signal from a first portion of the enclosure which they are "positioned underneath."  Appx3206-08 (¶¶ 126-28) (cleaned up).

Furthermore, Nissilä teaches that "electrodes 118, 122 are [also] preferably located *on* the inner surface 116 of the band 101."  Appx1818 (5:50-53) (emphasis added).



EX1006, FIG. 4                    EX1006, FIG. 5

Appx3206-07 (¶ 126); Appx1813 (Figs. 4, 5).

Thus, in an embodiment of U.S. Nissilä where membrane 119 contacts the skin directly, both the membrane and the electrodes would be located "on" inner surface 116, so the electrodes would not be "positioned underneath" the membrane, nor would they receive an electrical signal via the membrane's contact with the user's skin.  Dr. Kenny illustrated this configuration of Nissilä below:



Membrane 119 on inner
surface 116 (under
AliveCor's incorrect
reading of Nissilä)

Appx3206-08 (¶¶ 126-28).

Based on these teachings in U.S. Nissilä, the Board found that Apple and Dr.
Kenny presented "plausible explanation that, even if membrane 119 is a distinct
structure, its arrangement with respect to electrodes 118 and 122 would be one that
does not cover any surface of those electrodes that contacts a user's skin." Appx53-
54 (citing Appx557-59; Appx3207-08 (¶¶ 127-28)).[9] AliveCor might disagree with
the Board's ultimate conclusion, but it was its burden to demonstrate that its
interpretation of Nissilä was correct by a preponderance of the evidence, and it failed
to do so. *Eli Lilly*, 8 F.4th at 1347; *Medtronic*, 69 F.4th at 1352.

---

[9] AliveCor suggests the Board relied only on the two paragraphs of Dr. Kenny's
declaration cited on Appx53. Br. 43-44. In fact, the Board incorporated its entire
summary of Apple's evidence into its finding. Appx53 ("*see also supra* § II.E.d.b
[Summary of Patent Owner's Arguments] (reproducing annotated figures)").

**2.** AliveCor argues that Dr. Kenny's testimony and the annotations of the U.S. Nissilä figures above are due "no weight" because they are "plainly inconsistent with Nissilä's disclosures." Br. 44-46 (citing *Homeland Housewares*, 865 F.3d at 1378). AliveCor argues that Dr. Kenny contradicted Nissilä by stating that "there is simply no disclosure in Nissilä of an intermediate layer [membrane 119] of the enclosure of the device positioned between the electrodes 118, 122 and the skin of the wearer." Br. 44 (citing Appx3207-3208(¶¶ 127-28)). None of AliveCor's citations to Nissilä contradict his opinion.

AliveCor, for example, again relies on U.S. Nissilä's teaching that membrane 119 can "come into contact with the person's skin surface," and argues that this statement "makes clear that membrane 119 is outside (on top of) the electrodes 118, 122 (meaning the electrodes are underneath)." Br. 45 (citing Appx1818 (5:40-44)). But as discussed above (*supra* pp. 49-51, 62-68), this disclosure says nothing about membrane 119's arrangement with respect to the *electrodes*. Rather, Nissilä teaches that membrane 119 may come into contact with the user's skin by being positioned on top of inner surface 116, and further teaches that the electrodes, too, are positioned on top of and surrounded by inner surface 116.[10] *Supra* pp. 65-67. In

---

[10] As discussed above, the most straightforward explanation is that membrane 119 and the electrodes 118, 122 are the same structure, consistent with the Board's primary finding. *Supra* pp. 41-60.

68

addition, if membrane 119 were intended to be "on top of" electrodes 118 and 122 in a manner where the membrane would contact the user's skin at a point directly above the electrodes, then membrane 119 would be depicted at the *bottom* of the electrode "box" AliveCor shaded in yellow in Figure 5, rather than on the top (interior) of the box. *Supra* pp. 62-64.

Next, AliveCor argues that the membrane must be on top of the electrodes because it is made from electrically conductive material, which "allow[s] the electrodes to detect ECG signals." Br. 45 (citing Appx1818 (5:33-44, 5:6-9)). But Nissilä does not support AliveCor's argument that the membrane must be positioned "on the electrodes" simply because the membrane is "electrically conductive." Rather, the passages in Nissilä on which AliveCor relies expressly state that the membrane "is located *at* both ends of the electrode structure 100." Appx1818 (5:33-44) (emphasis added). To the extent "at" is not being used to indicate the membrane and electrodes are the same structure (as discussed above, *supra* pp. 44-46, 51), this language is consistent with the below annotation of Dr. Kenny's interpretation of AliveCor's (incorrect) view of Nissilä, showing the membrane at the "end" (edges) of the electrode:



Appx3207-08 (¶¶ 127-28).

Finally, that the "electrically conductive adhesive 127" helps to conduct electrical signals from skin says nothing about its relationship to the position of the electrode relative to the membrane, and Apple's expert never suggested otherwise. Br. 45-46 (citing Appx1818 (5:39-46); Appx2624-2625 (121:18-122:3)). If anything, in AliveCor's cited passage, Dr. Kenny explicitly rejects that the electrodes would be underneath the membrane, characterizing them as located "left and right" of the membrane. Appx2624-2625 (121:18-122:3). Accordingly, the Board's alternative finding is supported by substantial evidence. *Microsoft*, 878 F.3d at 1071-73; *Eli Lilly*, 8 F.4th at 1347-49.

### C. AliveCor Has Not Established a Motivation to Combine Markel and U.S. Nissilä, and Has Forfeited Any Such Argument for the "Embedded In" Claim Limitations

Finally, this Court can affirm on the basis that AliveCor failed to establish before the Board (and on appeal) a motivation to combine Markel and U.S. Nissilä for all three limitations in claim [1c].[11]

The Board held that U.S. Nissilä not only fails to teach the "positioned underneath" limitation ([1.c.iii]), but also that AliveCor provided an "inadequate" "evidentiary basis" to find that Nissilä teaches a separate pad "embedded in" the first portion of the enclosure in the manner required by limitations [1.c.i] and [1.c.ii]. Appx54 (finding that AliveCor failed to show that Nissilä's membrane "encloses th[e] electrodes" in the manner required by the claims). Thus, the Board's findings on the lack of motivation to combine Markel and U.S. Nissilä relied on all three limitations of [1.c], not simply the finding that Nissilä does not teach a separate electrode structure "positioned underneath" the membrane. Appx42 n.14; Appx45; Appx53-54; Appx54 n.18; *St. Jude Med., LLC v. Snyders Heart Valve LLC*, 977 F.3d 1232, 1242-43 (Fed. Cir. 2020) (affirming for substantial evidence Board's finding that petitioner had not "prove[d] that a relevant artisan would have made the particular combination" required by its petition).

---

[11] The Board's holding regarding Ground 2's "deficiencies" also applies to the 1[d] limitations. Appx54, n.18.

In its opening brief on appeal, however, AliveCor fails to address the Board's judgment with respect to these two "embedded in" limitations and thus has forfeited any argument that it met its burden to show claims 1-14 would have been obvious, even if the Court agrees with its interpretation of claim [1.c.iii].  *See Quanergy Sys., Inc. v. Velodyne Lidar USA, Inc.*, 24 F.4th 1406, 1415 n.6 (Fed. Cir. 2022) (party's failure to challenge Board's findings in opening brief constituted forfeiture).

## CONCLUSION

For the foregoing reasons, this Court should affirm the Board's judgment that AliveCor failed to show claims 1-14 of the '257 patent are unpatentable as obvious.

Dated: October 23, 2025

Respectfully submitted,

_____
*/s/ Brian A. Rosenthal*

Jaysen S. Chung
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
(415) 393-8271

Brian A. Rosenthal, *Principal Attorney*
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
(212) 351-2339

Nathaniel R. Scharn
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, CA 92612
(949) 451-3800

Julia G. Tabat
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
(214) 698-3465

*Counsel for Appellee Apple Inc.*

# CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitation of Federal Circuit Rule 32(a) and the rules of this Court.  This brief contains 13,994 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b).

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2019 in Times New Roman, 14-point.


Dated:  October 23, 2025

/s/     *Brian A. Rosenthal*

Brian A. Rosenthal
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166
(212) 351-2339

# CERTIFICATE OF SERVICE

I, Brian A. Rosenthal, hereby certify that on October 23, 2025, I caused the
foregoing to be filed via the Court's CM/ECF system and served on all counsel of
record via CM/ECF.

Dated:   October 23, 2025

*/s/ Brian A. Rosenthal*

Brian A. Rosenthal
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166
(212) 351-2339