Philip C. Ducker (SBN 262644)
Michelle A. Clark (SBN 243777)
Katherine G. Rubschlager (SBN 328100)
ALSTON & BIRD, LLP
55 Second Street, Suite 2100
San Francisco, California 94105-0912
Telephone: (415) 243-1000
Facsimile: (415) 243-1001
phil.ducker@alston.com
michelle.clark@alston.com
katherine.rubschlager@alston.com

*Attorneys for AliveCor, Inc.*

*Additional counsel on signature page*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

|  |  |
|---|---|
| APPLE INC., <br><br> Plaintiff, <br><br> v. <br><br> ALIVECOR, INC., <br><br> Defendant. | Case No. 4:22-cv-07608-HSG <br><br> **DEFENDANT'S NOTICE OF MOTION AND MOTION FOR LEAVE TO SUPPLEMENT AND AMEND ITS INVALIDITY CONENTIONS PURSUANT TO PATENT LOCAL RULE 3-6** <br><br> Date: April 16, 2026 <br> Time: 2:00 p.m. <br> Courtroom: Courtroom 2 – 4th Floor <br> Judge: Hon. Haywood S. Gilliam, Jr. |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** as soon as the matter may be heard, at 1301 Clay Street, Oakland, CA 941612, Defendant AliveCor, Inc. ("Defendant" or "AliveCor") will and hereby does move for an order granting leave to supplement and amend its invalidity contentions pursuant to Patent L.R. 3-6(b). This Motion is based on this notice of motion and supporting memorandum of points and authorities; the supporting declaration of Philip Ducker ("Ducker Decl."); and any written and oral argument and authorities that are presented at or before the hearing of this Motion.

## **RELIEF REQUESTED**

AliveCor requests leave to supplement and amend its invalidity contentions in order to (1) incorporate evidence obtained through further investigation and discovery, including third-party discovery, motivated in part by positions taken by the parties in this litigation and the IPRs; (2) clearly identify AliveCor's contentions regarding combinations in response to Apple's discovery responses; and (3) update previously provided contentions relating to the '898 Patent with additional citations to the prior art responsive to the parties' agreed upon construction of the "detailed view" term. AliveCor's proposed amendments are attached as **Exhibits C, D, and E** to the Ducker Declaration.

Dated: February 13, 2026

**ALSTON & BIRD LLP**

BY:   _/s/ Philip C. Ducker_
          Philip C. Ducker (SBN 262644)
          55 Second Street, Suite 2100
          San Francisco, California 94105-0912
          Telephone: (415) 243-1000
          Facsimile: (415) 243-1001
          phil.ducker@alston.com

# **TABLE OF CONTENTS**

I.     INTRODUCTION .................................................................................................... 1

II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY ........................... 1

       A.    AliveCor's Prior Art Investigation................................................................ 1

       B.    AliveCor's Amended Invalidity Contentions ............................................... 2

             1.    Amended and Supplemental Contentions Based on Diligent
                   Investigation and Discovery (Exhibits A-04, A-09, B-04, D-01, D-03,
                   D-04, and Exhibits A-13 through A-18) ............................................. 3

             2.    Narrowed Combinations of Prior Art ................................................. 8

             3.    Updated Contentions That Address Positions Taken In The Litigation
                   And IPRs (Exhibits B-02, B-10, B-11)............................................. 11

             4.    AliveCor's Amended Cover Pleading ............................................. 12

III.   LEGAL STANDARD ........................................................................................... 12

IV.    GOOD CAUSE EXISTS FOR ALLOWING LEAVE TO AMEND .................... 13

       A.    AliveCor Diligently Investigated the Prior Art and Conducted Third-Party
             Discovery .................................................................................................... 13

             1.    Amended Exhibits A-04, A-09, B-04, D-01, D-03, D-04 ............................ 13

             2.    Supplemental Exhibits A-13, A-14, A-15, A-16, A-17, A-18 ...................... 15

       B.    AliveCor Seeks Leave to Respond to Apple's Objections by Identifying
             Specific Prior Art Combinations in Support of Obviousness ..................... 17

       C.    AliveCor Diligently Pursued and Disclosed Its Proposed Amendments Based
             on the Parties' Agreed Claim Construction for the '898 Patent ................. 18

       D.    AliveCor Diligently Amended Its Cover Pleading .................................... 19

       E.    Apple Will Not Be Prejudiced by AliveCor's Amendments. .................... 20

V.     CONCLUSION.................................................................................................... 21

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**FEDERAL CASES**

4

*Advanced Micro Devices, Inc. v. LG Elecs., Inc.*,
    No. 14-cv-01012-SI, 2017 WL 2774339 (N.D. Cal. June 26, 2017).......................................18

5

*Altera Corp. v. PACT XPP Techs., AG*,
    No. 14-cv-02868-JD, 2015 WL 3832389 (N.D. Cal. June 19, 2015)...............................12, 14

6

7

*Apple, Inc. v. Samsung Elec. Co.*,
    No. 12-cv-00630-LHK, 2012 WL 5632618 (N.D. Cal. Nov. 15, 2012)..................................13

8

9

*Facebook, Inc. v. Blackberry Ltd.*,
    No. 18-cv-05434-JSW (JSC), 2020 U.S. Dist. LEXIS 31377 (N.D. Cal. Feb. 13, 2020)
    ..................................................................................................................................................16, 19

10

11

*Fujifilm Corp. v. Motorola Mobility LLC*,
    No. 12-cv-03587-WHO, 2014 WL 491745 (N.D. Cal. Feb. 5, 2014) .........................12, 17, 21

12

13

*Golden Hour Data Sys., Inc. v. Health Servs. Integration, Inc.*,
    No. C 06-7477 SI, 2008 WL 2622794 (N.D. Cal. July 1, 2008) .....................................16, 20

14

*Ingenico Inc. v. IOENGINE, LLC*,
    136 F.4th 1354 (Fed. Cir. 2025) .............................................................................................18

15

16

*Karl Storz Endoscopy-America, Inc. v. Stryker Corp.*,
    No. 14-cv-00876-RS (JSC), 2016 WL 2855260 (N.D. Cal. May 13, 2016) ....................13, 20

17

18

*Longitude Licensing Ltd. v. Apple Inc.*,
    No. 14-cv-04275-EDL, 2015 WL 12778777 (N.D. Cal. Oct. 29, 2015) ................................16

19

*Netflix, Inc. v. Rovi Corp.*,
    No. 11-cv-06591-PJH (DMR), 2015 WL 3504969 (N.D. Cal. June 2, 2015)............15, 19, 20

20

21

*Network Appliance Inc. v. Sun Microsystems Inc.*,
    No. 07-cv-05488-EDL, 2009 WL 2761924 (N.D. Cal. Aug. 31, 2009) .................................20

22

*Positive Techs., Inc. v. Sony Elecs., Inc.*,
    No. 11-cv-2226 SI, 2013 WL 322556 (N.D. Cal. Jan. 28, 2013) ......................................12, 13

23

24

*Slot Speaker Technologies, Inc. v. Apple Inc.*,
    No. 13-cv-01161-HSG (DMR), 2017 WL 235049 (N.D. Cal. Jan .19, 2017)...................18, 20

25

26

*THX, Ltd. v. Apple, Inc.*,
    No. 13-cv-01161-HSG, 2016 U.S. Dist. LEXIS 57518 (N.D. Cal. Apr. 29, 2016)
    ..................................................................................................................................................13, 14, 21

27

28

*TVIIM, LLC v. McAfee, Inc.*,
    No. 13-CV-04545-HSG, 2015 WL 3956313 (N.D. Cal. June 28, 2015).................................20

*Vasudevan Software, Inc. v. Int'l Bus. Machines Corp*.,
    No. 09-cv-05897-RS, 2011 WL 940263 (N.D. Cal. Feb. 18, 2011)........................................12

*Yodlee, Inc. v. CashEdge, Inc.*,
    No. C 05-01550 SI, 2007 WL 1454259 (N.D. Cal. May 17, 2007)..................................17, 21

**RULES**

Patent L.R. 3-3 ........................................................................................................................1, 17

Patent L.R. 3-6 ......................................................................................................................12, 15

## I. INTRODUCTION

Defendant AliveCor, Inc. ("Defendant" or "AliveCor") moves for an order granting leave to supplement and amend its Invalidity Contentions served on Plaintiff Apple Inc. ("Apple") on September 8, 2023 ("Invalidity Contentions"). This is AliveCor's first request to amend its Invalidity Contentions.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. AliveCor's Prior Art Investigation

On December 2, 2022, Apple sued AliveCor for infringement of U.S. Patent Nos. 10,076,257 ("the '257 Patent"), 10,270,898 ("the '898 Patent"), and 10,568,533 ("the '533 Patent") (collectively, the "Asserted Patents").[1] Apple served its infringement contentions on July 25, 2023. Pursuant to Local Patent Rule 3-3 and the Court's Scheduling Order, AliveCor served its Invalidity Contentions on September 8, 2023. *See* **Ex. A**. The Invalidity Contentions comprised twelve claim charts for the '257 Patent, thirteen claim charts for the '898 Patent, and seven claim charts for the '533 Patent, all demonstrating how the cited prior art references anticipate and/or render obvious the asserted claims of the Asserted Patents; and an Appendix for each Asserted Patent compiling secondary references that, in combination with the charted primary references, render the asserted claims obvious. *Id.* at 19-22. The Invalidity Contentions also provided detailed disclosure regarding the background, state of the art, and exemplary motivations to combine references for each of the Asserted Patents. *Id.* at 22-80. At the time of service, Apple did not raise any dispute regarding the sufficiency of AliveCor's Invalidity Contentions.

Between June 2023 and October 2023, AliveCor filed IPR Petitions for each of the Asserted Patents. *See* Dkt. 62 at 6. On October 23, 2023, AliveCor filed a Motion to Stay proceedings based on the pending IPRs. Dkt. 62. On December 29, 2023, the Court granted AliveCor's Motion to Stay. *See* Dkt. 89. On March 27, 2025, following partial resolution of the IPR proceedings, the Court reopened the district court proceedings. *See* Dkt. 111.

Upon lifting of the stay, AliveCor resumed its efforts to seek third-party discovery regarding

---

[1] On April 9, 2025, pursuant to a joint stipulation between Apple and AliveCor, the Court dismissed U.S. Patent No. 10,866,619 ("the '619 Patent") with prejudice. Dkt. 116.

relevant prior art including issuing subpoenas to Casio America, Inc. ("Casio"), Omron Healthcare, Inc. ("Omron"), New Balance Athletics, Inc. ("New Balance"), Life Fitness, LLC ("Life Fitness"), Precor Inc. ("Precor"), and Fitbit LLC ("Fitbit"). Ducker Decl. at ¶ 3. AliveCor provided Apple with the appropriate notice of each subpoena prior to serving them and promptly produced to Apple the documents that AliveCor received in response to its subpoenas. *Id.* After receiving the various third-party subpoena responses and document productions, AliveCor analyzed the documents and information produced by the third parties and prepared Amended Invalidity Contentions, including amended and supplemental claim charts and an amended cover pleading. *Id.*

### B. AliveCor's Amended Invalidity Contentions

On February 2, 2026, AliveCor served its Amended Invalidity Contentions on Apple, explaining that good cause exists to amend and that there is no prejudice to Apple because discovery in this case is still in an early stage. **Ex. B** at 6–7. The Amended Invalidity Contentions include:

a. ten amended claim charts reflecting additional citations to prior art previously disclosed and charted (Exhibits A-04, A-09, B-02, B-04, B-10, B-11, D-01, D-03, and D-04 and Appendix A, collectively attached as **Ex. C**);

b. nine supplemental claim charts reflecting newly identified prior art references and providing claim charts for specific combinations (Exhibits A-13 – A-21, collectively attached as **Ex. D**); and

c. an amended cover pleading that identifies the newly identified references and motivations to combine for those new references (**Ex. E**).

**Exs. C, D, and E**, collectively "AliveCor's Amended Invalidity Contentions" or the "Amended Invalidity Contentions."[2] AliveCor also served redlines comparing the amended charts (**Ex. C**) to the original charts served with AliveCor's Invalidity Contentions in 2023. *See* **Ex. B** at 6.[3] AliveCor also requested Apple's position on this Motion. Thereafter, AliveCor met and conferred with Apple on February 5 and February 10 to discuss the scope of AliveCor's proposed amendments. AliveCor

---

[2] AliveCor's original Invalidity Contentions included certain claim charts that AliveCor does not seek to amend. AliveCor's proposed Amended Invalidity Contentions incorporate its original claim charts as served September 8, 2023. *See* **Ex. E** at 17–18.

[3] AliveCor could not provide a redline of Exhibit A-09 due to technical complications caused by the file size of the amended and original Exhibit A-09. Ducker Decl. at ¶ 4.

offered to meet and confer again on February 13. Ultimately, Apple declined to take a position before the Motion was filed.

AliveCor seeks leave to amend its Invalidity Contentions in order (1) incorporate evidence obtained through further investigation and discovery; (2) clearly identify specific obviousness combinations upon which AliveCor intends to rely; and (3) add additional citations to previously-cited evidence in response to positions taken by the parties in this litigation and the '898 Patent IPR Proceeding.

### 1. Amended and Supplemental Contentions Based on Diligent Investigation and Discovery (Exhibits A-04, A-09, B-04, D-01, D-03, D-04, and Exhibits A-13 through A-18)

AliveCor seeks to amend its contentions with respect to previously identified and charted references[4] to incorporate evidence obtained through further investigation and discovery completed after service of its Invalidity Contentions, including third-party discovery. *See* **Ex. C** (Exhibits A-04, A-09, B-04, D-01, D-03, D-04). AliveCor also seeks to add certain prior art and invalidity contentions based thereon that are the result of further third-party discovery and investigation. **Ex. D** (Exhibits A-13, A-14, A-15, A-16, A-17, A-18). For example, in addition to seeking discovery from previously-identified prior artist products Casio, Omron, and Fitbit, AliveCor also issued subpoenas and searched for publicly-available documentation from New Balance, Life Fitness, and Precor.

### a. Amended Exhibit A-04: Casio

AliveCor seeks to amend its contentions for the '257 Patent with respect to the previously identified and charted Casio BP-100 prior art product. Upon lifting of the stay, AliveCor served a Notice of Subpoena to Casio America, Inc. on Apple on August 8, 2025. **Ex. F**. Casio was formally served with a subpoena *duces tecum* on August 15, 2025. **Ex. G**. Casio served its objections and responses to the subpoena on September 3, 2025. **Ex. H**. That same day, Casio produced one user manual and one document containing sales data relating to the Casio PB-100 on September 3, 2025. *Id.* AliveCor promptly served Casio's documents on Apple on September 5, 2025. Ducker Decl. at ¶ 5.

---

[4] AliveCor's original Exhibits A-04, A-09, B-04, D-01, D-03, and D-04 were based on publicly available information and/or information within AliveCor's possession, custody, and control located prior to the contention deadline.

AliveCor's proposed amendments with respect to the Casio BP-100 supplements its original chart to cite the documents produced by Casio, which contain further evidence demonstrating public availability of the Casio BP-100 and how the Casio BP-100 anticipates and/or renders obvious the asserted claims of the '257 Patent. **Ex. C** (Exhibit A-04). Amended Exhibit A-04 also includes additional citations to a patent demonstrating the functionality of the BP-100 and annotations specifically identifying which components meet the claim limitations. *Id.*

### b. Amended Exhibit A-09: Omron

AliveCor seeks to amend its contentions for the '257 Patent with respect to the previously identified and charted Omron HeartScan HCG-801 prior art product. AliveCor initially charted the Omron HeartScan HCG-801 using publicly available information and a HeartScan HCG-801 that AliveCor purchased on eBay. Ducker Decl. at ¶ 6. The physical product purchased from eBay arrived sealed, and the internal structure (relevant to the claims of the '257 Patent) could not be accessed without damaging the product. *Id.*

AliveCor contacted Omron on August 29, 2023, seeking documents regarding the design, functionality, and sale of the Omron HeartScan HCG-801. Ducker Decl. at ¶ 7. Following initial conversations with Omron before the contention deadline, AliveCor believed it would be able to locate documents from Omron that showed the internal characteristics of the HeartScan HCG-801 without tearing down the device. *Id.* These conversations continued through the end of the year, but paused coinciding with the stay in this proceeding. Following the lifting of the stay, AliveCor contacted Omron on May 21, 2025, to resume the previous discussions. *Id.* AliveCor issued a formal subpoena to Omron on July 8, 2025. **Ex. I**. As early as September 14, 2023, Omron represented that responsive documents exist. Ducker Decl. at ¶ 8. On October 16, 2025, Omron provided AliveCor with a screenshot of one document via email. *Id.* AliveCor requested the underlying document so that it may be produced in the litigation. *Id.* The screenshot was ultimately produced. *Id.*

Omron produced documents responsive to AliveCor's subpoena on November 26, 2025. Ducker Decl. at ¶ 9. In so providing, Omron explained that it had taken substantial time and effort, including consulting with Omron's former President, to identify the responsive material. *Id.* Omron further represented that it is continuing to search for and produce additional potentially relevant

material. *Id.* Following confirmation regarding the confidentiality of Omron's production, AliveCor served the Omron productions on Apple on December 17, 2025. *Id.*

In addition, AliveCor located additional evidence regarding the public availability of the Omron prior art as well as its salient features. Ducker Decl. at ¶ 9. AliveCor attorneys obtained an additional Omron HeartScan HCG-801 product from public sources and tore down the device to further elucidate its constituent components. *Id.* AliveCor's proposed amendments supplement its original contentions with documents demonstrating public availability and evidence regarding the internal components of the HeartScan. **Ex. C** (Exhibit A-09). Amended Exhibit A-09 also includes annotations specifically identifying which components meet the claim limitations. *Id.*

### c. Amended Exhibit B-04: Fitbit

AliveCor seeks to amend its contentions for the '898 Patent with respect to the previously identified and charted Fitbit prior art products. AliveCor initially contacted Fitbit on August 24, 2023, seeking its assistance in locating documents regarding the design, functionality, and sale of the Fitbit products, mobile app, and website/dashboard that were on sale or otherwise in use prior to the earliest priority date of the '898 Patent. Ducker Decl. at ¶ 11. These conversations continued from August 2023 until the Court stayed the case in December 2023. *Id.* Counsel for AliveCor met with Fitbit's internal counsel to discuss AliveCor's document requests just prior to the stay issued on December 20, 2023. *Id.* Following the lifting of the stay, AliveCor served a Notice of Subpoena to Fitbit on Apple on August 8, 2025. **Ex. J**. Fitbit was formally served with the subpoena on August 11, 2025. **Ex. K**. Fitbit served its objections and responses to AliveCor's subpoena on September 10, 2025 and produced documents in response to subpoena on October 20, 2025. **Ex. L**. Following technical issues with the format of Fitbit's production, AliveCor served the Fitbit production on Apple on October 27, 2025. Ducker Decl. at ¶ 12.

AliveCor's proposed amendments with respect to the Fitbit Products supplement its original contentions to cite the documents produced by Fitbit, which contain further evidence demonstrating public availability of the Fitbit products and how the Fitbit products anticipate and/or render obvious the asserted claims of the '898 Patent. **Ex. C** (Exhibit B-04).

#### d.  Amended Exhibit D-01: KardiaBand

AliveCor seeks to amend its contentions for the '533 Patent with respect to the previously identified and charted KardiaBand prior art product. The KardiaBand was developed by AliveCor and FDA cleared and on sale no later than November 30, 2017. In its Invalidity Contentions, AliveCor identified the KardiaBand in combination with the Apple Watch Series 3 or earlier as prior art to the '533 Patent and served an invalidity chart based on the information it had identified based on a reasonably diligent search of evidence within its possession, custody, and control at the time of the original contention deadline. *See* **Ex. A** at 16–17.

AliveCor seeks to supplement its original contentions with additional photographs and videos of how the KardiaBand anticipates and/or renders obvious the asserted claims. **Ex. C** (Exhibit D-01). AliveCor's supplement is based on videos and photos of the only KardiaBand and Apple Watch that AliveCor is aware of that runs a version of AliveCor's Watch App with a first and second user interface that meet the limitations of the asserted claims of the '533 Patent and illustrating their operation as they existed and were used publicly before the priority date of the '533 Patent. Ducker Decl. at ¶ 13. At the time of the original contention deadline, this product was a physical exhibit in the ITC Investigation between AliveCor and Apple, *Certain Wearable Electronic Devices*, Inv. No. 337-TA-1266 (U.S.I.T.C.), and to preserve chain of custody, remained in the possession of outside counsel for AliveCor in that matter (i.e., not within the possession of AliveCor or its counsel in this case) until the conclusion of the ITC Investigation. *Id.* AliveCor regained possession of the product in August 2025 and thereafter sought expert assistance to identify the relevant features of the application running on the Watch.[5] Ducker Decl. at ¶ 14. Amended Exhibit D-04 also includes annotations specifically identifying which components and user interfaces meet the claim limitations. **Ex. C** (Exhibit D-04). The amended chart does not change AliveCor's previously articulated invalidity theory, but simply adds additional evidence of the prior art product to its disclosure. *Id.*

---

[5] Authenticating the Apple Watch and the App running on it is challenging because iOS includes an automatic update feature that would spoliate the relevant prior art evidence and also render the application running on the Apple Watch inoperable if it were connected to the Internet. Ducker Decl. Ducker Decl. at ¶ 14.

1

### e.   Amended Exhibit D-03: KardiaMobile

2       AliveCor seeks to amend its contentions for the '533 Patent with respect to the previously

3   identified and charted KardiaMobile prior art product. AliveCor seeks to supplement its original

4   contentions with newly produced videos obtained through further investigation that show how the

5   KardiaMobile anticipates and/or renders obvious that asserted claims. **Ex. C** (Exhibit D-03).

6   Amended Exhibit D-03 also includes annotations specifically identifying which components and user

7   interfaces meet the claim limitations. *Id.* The amended chart does not change AliveCor's previously

8   articulated invalidity theory, but simply adds additional evidence of the prior art product to its

9   disclosure.

10

### f.   Amended Exhibit D-04: ECGPen

11       AliveCor seeks to amend its contentions for the '533 Patent with respect to the previously

12   identified and charted ECGPen prior art product. AliveCor seeks to supplement its original

13   contentions with newly produced videos obtained through further investigation that show how the

14   ECGPen anticipates and/or renders obvious the asserted claims as well as bates numbers for evidence

15   cited in the original contentions that were produced after AliveCor served its Invalidity Contentions.

16   **Ex. C** (Exhibit D-04). Amended Exhibit D-04 also includes annotations specifically identifying

17   which components and user interfaces meet the claim limitations. *Id.* The amended chart does not

18   change AliveCor's previously articulated invalidity theory but simply adds additional evidence of the

19   prior art product to its disclosure.

20

### g.   Supplemental Exhibits A-13, A-14, A-15, A-16, A-17, and A-18

21       AliveCor seeks to supplement its contentions for the '257 Patent to reflect evidence of the

22   following prior art products identified through its diligent pursuit of third-party discovery: the New

23   Balance HRT Max; the Life Fitness 95T Treadmill, 95C Upright Bike, and T3 Consumer Treadmill;

24   the Precor EFX 576i, 556i, and 566i Elliptical Fitness Crosstrainers; the Precor EFX 5.17i and EFX

25   5.19 Elliptical Cross Trainer; and the Polar Strap sold by Precor with its ellipticals. *See* **Ex. E** at 13.

26   AliveCor also worked with a technical expert to identify U.S. Patent No. 7,255,609 (the "'609

27   Patent") as relevant prior art to the '257 Patent. The relevance of the '609 Patent was made clear by

28   the documents produced in response to the Life Fitness and Precor subpoenas, because the '609 Patent

expressly elucidates the connecting component between the leads/pads and processor—a feature that is implied in the prior art product documentation (and likely necessary to make the product function as intended), but which is too esoteric to be expressly shown in some of the material evidence obtained from the third parties. *See* **Ex. D** (Exhibit A-17 at 2; Exhibit A-18 at 2). AliveCor seeks leave to serve supplemental invalidity charts A-13 through A-18[6] that demonstrate how certain New Balance, Life Fitness, and Precor prior art products anticipate and/or render obvious the asserted claims.

After the '257 Patent IPR Proceeding concluded and the stay was lifted, AliveCor served Notices of Subpoena to New Balance, Life Fitness, and Precor on Apple on August 11, 2025. **Exs. M, N, O**. Each of the third parties were formally served with respective subpoenas on August 12, 2025. **Exs. P, Q, R**. New Balance responded to the subpoena on September 11, 2025 and produced a hard copy of its production. Ducker Decl. at ¶ 15. New Balance then supplemented its production to address formatting and eligibility concerns on November 6, 2025. *Id.* From August to October, counsel for Life Fitness met and conferred with counsel for AliveCor on multiple occasions regarding Life Fitness's response to the subpoena and produced responsive documents on October 6, 2025 and again on October 27, 2025. *Id.* at ¶ 16. Precor produced documents responsive to AliveCor's subpoena on October 3, 2025. *Id.* at ¶ 17. All documents produced by New Balance, Life Fitness, and Precor were produced to Apple on a timely basis, upon receipt. *Id.* at ¶ 18.

### 2. Narrowed Combinations of Prior Art

AliveCor seeks to amend its Invalidity Contentions to more specifically identify combinations of prior art upon which its obviousness contentions rely. AliveCor previously identified several combinations and motivations to combine in its Invalidity Contentions. *See* **Ex. A** at 20-30, 31-66, 68-80. On November 17, 2023, Apple identified—in response to AliveCor's Interrogatory No. 3— its position that AliveCor's contentions do not sufficiently identify specific combinations of prior art:

> AliveCor's chart lists dozens of prior art references without any motivation to combine, and **it is unclear what combinations it is alleging**. Until AliveCor provides a reasonable number of combinations and makes clear its motivation to

---

[6] A-13 (New Balance HRT); A-14 (Life Fitness Exercise Equipment); A-15 (Precor Exercise Equipment); A-16 (Precor Exercise Equipment with the Polar Strap); A-17 (Life Fitness Exercise Equipment and the '609 Patent); A-18 (Precor Exercise Equipment and the '609 Patent).

combine, it is unduly burdensome for Apple to attempt to analyze and respond to this chart.

**Ex. S** at 35 (emphasis added); *see also id.* at 60, 83. Apple did not address the combinations or motivations to combine identified in AliveCor's cover pleading. Though AliveCor does not agree that its Invalidity Contentions are deficient, to resolve any dispute, AliveCor seeks to amend its contentions to expressly identify the obviousness combinations on which it intends to rely going forward. **Ex. B** at 5. AliveCor does not offer any combinations or new theories of unpatentability with respect to the prior art references previously identified in its original Invalidity Contentions.

AliveCor's combinations for the '257 Patent are summarized below:

- <u>Exhibit A-04</u>: Casio BP-100 alone or in view of one of skill in the art;

- <u>Exhibit A-09</u>: Omron HeartScan HCG-801 alone or in view of one of skill in the art;

- <u>Exhibit A-13</u>: New Balance HRT Max alone or in view of one of skill in the art;

- <u>Exhibit A-14</u>: Life Fitness exercise equipment alone, in view of other Life Fitness exercise equipment, and/or in view of one of skill in the art;

- <u>Exhibit A-15</u>: Precor exercise equipment alone or in view of one of skill in the art;

- <u>Exhibit A-16</u>: Precor exercise equipment in combination with the Polar Strap, further in view of Nissilä,[7] and/or further in view of one of skill in the art;

- <u>Exhibit A-17</u>: Life Fitness exercise equipment in view of the '609 Patent and/or further in view of one of skill in the art;

- <u>Exhibit A-18</u>: Precor exercise equipment in view of the '609 Patent and/or further in view of one of skill in the art;

- <u>Exhibit A-19</u>: Omron HeartScan HCG-801 in view of Mills[8] and/or further in view of one of skill in the art;

- <u>Exhibit A-20</u>: Casio BP-100 in view of Mills and/or further in view of one of skill in the art;

---

[7] The Nissilä prior art reference was previously identified and charted in AliveCor's Invalidity Contentions in Appendix A. *See* **Ex. A** at 7. Nissilä was also asserted in Ground 2 in the '257 IPR Proceeding.
[8] The Mills prior art reference (U.S. Patent No. 5,289,824) was previously identified and charted in AliveCor's Invalidity Contentions as Exhibit A-07. Exhibit A-07 is incorporated by reference in Exhibits A-19, A-20, and A-21.

and

- Exhibit A-21: New Balance HRT Max in view of Mills and/or further in view of one of skill in the art.

In each of Amended Exhibits A-04 and A-09 and in Exhibits A-13 through A-21, AliveCor also provides exemplary citations to secondary prior art references previously identified in AliveCor's Appendix A, including Chen, Cudahy, Sujdak, Ceballos, Gilles, Weiss.[9] Excluding combinations with the newly identified third-party prior art references (*see* Section II.B.1.g, *supra*), each of the references in AliveCor's combinations for the '257 Patent were originally identified and charted in AliveCor's Invalidity Contentions.

AliveCor's combinations for the '898 Patent are summarized below:

- Exhibit B-01: Cannon alone or in view of one of skill in the art;
- Exhibit B-02: Cohen alone, or in view of one of skill in the art, and/or in view of Shannan;
- Exhibit B-03: Couse alone or in view of one of skill in the art;
- Exhibit B-04: Fitbit products alone or in view of one of skill in the art;
- Exhibit B-05: Garmin products alone or in view of one of skill in the art;
- Exhibit B-06: Halsted alone or in view of one of skill in the art;
- Exhibit B-07: Health Tracker alone or in view of one of skill in the art;
- Exhibit B-08: Hoffman alone or in view of one of skill in the art;
- Exhibit B-09: Kuppuraj alone or in view of one of skill in the art;
- Exhibit B-10: Molettiere alone, or in view of one of skill in the art, and/or in view of Hoffman, Yuen, and/or Fitbit
- Exhibit B-11: Shaanan, or in view of one of skill in the art, and/or in view of Cohen;
- Exhibit B-12: Withings Health Mate alone or in view of one of skill in the art; and
- Exhibit B-13: Yuen alone or in view of one of skill in the art.

---

[9] *See* **Ex. C** (Exhibit A-04 at 67–68, 117–118, 156–157, 159, 160, 162), (Exhibit A-09 at 30–32, 54–56, 64–65, 67, 68, 69); **Ex. D** (Exhibit A-13 at 50–52, 85–87, 106–107, 109–110, 111, 112), (Exhibit A-14 at 100–102, 147–149, 161–162, 164, 166, 167), (Exhibit A-15 at 39–41, 62–64, 76–77, 79, 80, 82), (Exhibit A-16 at 147–149, 184–186, 226–227, 230, 231, 233), (Exhibit A-17 at 102–104, 170–171, 184–185, 188, 189–190, 191), (Exhibit A-18 at 40–42, 84–85, 98–99, 102, 103–104, 105), (Exhibit A-19 at 66–67, 121–122, 153, 156, 157, 159), (Exhibit A-20 at 99–100, 177–178, 238, 241, 242, 243–244), (Exhibit A-21 at 84–85, 147–148, 190, 193, 194, 195–196).

Each of the references and the combinations in AliveCor's Amended Invalidity Contentions for the '898 Patent were originally identified and charted in AliveCor's Invalidity Contentions. *See* **Ex. A** at 8–10, 15.

AliveCor's combinations for the '533 Patent are summarized below:

- Exhibit D-01**:** KardiaBand alone, in view of one of skill in the art, and/or in view of KardiaMobile and/or ECGPen;

- Exhibit D-02: Ahit alone or in view of one of skill in the art;

- Exhibit D-03: KardiaMobile alone, in view of one of skill in the art, and/or in view of KardiaBand and/or ECGPen;

- Exhibit D-04: ECGPen alone, in view of one of skill in the art, and/or in view of KardiaBand and/or KardiaMobile;

- Exhibit D-05: Hooper alone or in view of one of skill in the art;

- Exhibit D-06: Nakada alone or in view of one of skill in the art; and

- Exhibit D-07: Lee alone or in view of one of skill in the art.

Each of the references and the combinations in AliveCor's Amended Invalidity Contentions for the '533 Patent were originally identified and charted in AliveCor's Invalidity Contentions. *See* **Ex. A** at 11–12, 16–17.

In the interest of narrowing issues in dispute as discovery continues and trial approaches, AliveCor states that it will pursue only the above identified combinations in this litigation.

### 3.    Updated Contentions That Address Positions Taken In The Litigation And IPRs (Exhibits B-02, B-10, B-11)

AliveCor seeks to amend its contentions for the '898 Patent with respect to the previously identified and charted Cohen, Molettiere, and Shannan references to address the parties' agreed construction of "display a detailed view . . . ." *See* Dkt. 161 at 2. AliveCor's original contentions were consistent with Apple's infringement contentions that mapped the claimed "detailed view" to two different user interfaces. *See, e.g.*, **Ex. T** at 33-48. However, during the '898 Patent IPR Proceeding, AliveCor came to understand that Apple believes the "detailed view" requires "display of a view comprising *both* constituent elements"—a "graph representation" and a "selectable data sharing

option." **Ex. U** at 1 (emphasis original). Thereafter, AliveCor sought construction of the "detailed view" claim term and, at the *Markman* hearing, the parties agreed to a construction consistent with Apple's IPR statements. *See* Dkt. 131-1 at page A-13. Now, AliveCor seeks leave to serve Amended Exhibits B-02 (Cohen), B-10 (Molettiere), and B-11 (Shannan) (**Ex. C**) to demonstrate that the previously identified and charted prior art references anticipate and/or render obvious the asserted claims of the '898 Patent under Apple's infringement theory and the parties' agreed construction.

### 4. AliveCor's Amended Cover Pleading

AliveCor seeks to amend the cover pleading to address the above proposed amendments for clarity. AliveCor also seeks to amend the cover pleading to remove contentions directed to the '619 Patent after it was dismissed with prejudice.

## III. LEGAL STANDARD

Patent L.R. 3-6 permits a party to amend its contentions "by order of the Court upon a timely showing of good cause." Patent L.R. 3-6 provides "[n]on-exhaustive examples" of support for a finding of good cause, including "[r]ecent discovery of material, prior art despite earlier diligent search." *Id*. In evaluating good cause, courts in this District consider two main factors: (1) whether the movant was diligent in amending its contentions, and (2) whether the proposed amendment would prejudice the non-movant. *Vasudevan Software, Inc. v. Int'l Bus. Machines Corp*., No. 09-cv-05897-RS, 2011 WL 940263, *1 (N.D. Cal. Feb. 18, 2011). A party must generally show both diligence in discovering the basis for amendment and diligence in seeking amendment once the basis for amendment has been discovered. *Positive Techs., Inc. v. Sony Elecs., Inc.*, No. 11-cv-2226 SI, 2013 WL 322556, at *2 (N.D. Cal. Jan. 28, 2013). The Court not only considers a party's diligence in searching for prior art or in moving to amend when new information is discovered—the Court also considers such factors as the relevance of the new prior art and the difficulty of locating the prior art. *Fujifilm Corp. v. Motorola Mobility LLC*, No. 12-cv-03587-WHO, 2014 WL 491745, at *4 (N.D. Cal. Feb. 5, 2014).

Courts have found "diligence" and granted motions to amend in a variety of circumstances involving new information found during discovery—including during third-party discovery. *See, e.g*., *Fujifilm*, 2014 WL 491745, at *4–6 (granting motion to amend to add five prior art references,

including references identified through third-party discovery); *Altera Corp. v. PACT XPP Techs., AG*, No. 14-cv-02868-JD, 2015 WL 3832389, at *1, 3 (N.D. Cal. June 19, 2015) (granting motion to amend to modify existing charts, including to cite documents received pursuant to a subpoena); *THX, Ltd. v. Apple, Inc.*, No. 13-cv-01161-HSG, 2016 U.S. Dist. LEXIS 57518, at *6 (N.D. Cal. Apr. 29, 2016) (same).

Even if the moving party is unable to show diligence, the Court retains discretion to grant leave to amend. *Apple, Inc. v. Samsung Elec. Co.*, No. 12-cv-00630-LHK, 2012 WL 5632618, at *5 (N.D. Cal. Nov. 15, 2012). For example, courts have allowed amendment "where there was still ample time left in discovery." *Id.* (granting leave to amend when there was no prejudice). "Prejudice is typically found when amending contentions stand to disrupt the case schedule or other court orders." *Karl Storz Endoscopy-America, Inc. v. Stryker Corp.*, No. 14-cv-00876-RS (JSC), 2016 WL 2855260, at *3 (N.D. Cal. May 13, 2016).

## IV.    GOOD CAUSE EXISTS FOR ALLOWING LEAVE TO AMEND

AliveCor has been diligent in locating additional evidence and disclosing its Amended Invalidity Contentions. Both before and after the stay was imposed in this case, AliveCor diligently investigated prior art products and pursued evidence from third parties to support its invalidity contentions. *See Positive Techs.*, 2013 WL 322556, at *2.[10] Thus, good cause exists and leave to amend should be granted.

AliveCor further addresses diligence for each proposed amendment described above.

### A. AliveCor Diligently Investigated the Prior Art and Conducted Third-Party Discovery

#### 1.    Amended Exhibits A-04, A-09, B-04, D-01, D-03, D-04

AliveCor originally identified and charted the Casio, Omron, Fitbit, KardiaBand, KardiaMobile, and ECGPen prior art products in its Invalidity Contentions, where it demonstrated how each of these products anticipate and/or render obvious the asserted claims based on the publicly

---

[10] Although AliveCor could have (and did) seek third-party discovery before the stay, good cause does not require "perfect diligence," "especially in a case such as this where the Court has not yet imposed a discovery deadline" or issued a *Markman* order. *See THX*, 2016 U.S. Dist. LEXIS 57518, at *7 (granting Apple leave to amend invalidity contentions after conducting third-party discovery).

1   available information AliveCor had as of the contention deadline. Ducker Decl. at ¶ 19.

2       As discussed in Sections II.B.1.b–c, AliveCor diligently sought documents directly from

3   Omron and Fitbit prior to the stay.[11] Once the stay was lifted, AliveCor issued third-party subpoenas

4   to Omron, Fitbit, and Casio in July and August 2025. From July to November 2025, AliveCor sought

5   documents, physical products, and information about the originally charted products. Ducker Decl.

6   at ¶¶ 5–12. The information AliveCor received from Casio and Fitbit includes technical, marketing,

7   and sales documents not in the public domain. Courts have found diligence and granted motions

8   amend under similar circumstances—including based on documents received in response to a third-

9   party subpoena. *See, e.g.*, *THX*, 2016 U.S. Dist. LEXIS 57518, *6–7 (granting Apple leave to amend

10  invalidity contentions where Apple issued a subpoena less than three months after the court lifted the

11  stay, two months after receiving the last of the relevant third-party documents, and five months after

12  receiving the first relevant third-party documents); *Altera*, 2015 WL 3832389 at *1, 3 (granting leave

13  to amend invalidity contentions based on documents produced in response to a third-party subpoena

14  issued only after the information sought by the subpoena became relevant).

15      At the same time, counsel for AliveCor continued to diligently investigate technical and sales

16  information related to Omron HeartScan HCG-801, which resulted in (1) an additional Omron

17  HeartScan product and (2) the discovery of FDA documents demonstrating the public availability of

18  the Omron HeartScan. Because counsel for AliveCor did not originally have more than one HeartScan

19  HCG-801 device prior to the contention deadline, it could not tear down and destroy the only working

20  prior art product it had in its possession. The additional device located after the stay has allowed

21  AliveCor to open one sample and take photos of inner components of the product, while separately

22  maintaining a functional prior art product.

23      Additionally, as discussed in Section II.B.1.d, AliveCor disclosed and charted the KardiaBand

24  prior art product based on publicly available information in its original contentions. However, at the

25  time, it was unable to obtain a working sample of the KardiaBand paired with an AppleWatch. Ducker

26  Decl. at ¶ 13. Because Apple upgraded its operating system to foreclose compatibility with the

27

28  ---
    [11] AliveCor was preparing to serve a subpoena on Casio America, Inc., but the stay issued before
    AliveCor was able to do so. *See, e.g.*, **Ex. V** at 10 (identifying Casio America, Inc. as having
    knowledge of relevant facts (dated November 17, 2023)).

KardiaBand, the only way to obtain a functioning prior art system was to locate both a prior art KardiaBand product *and* an Apple Watch that had the old operating system on it—a challenging task because Apple automatically pushes upgrades when the Watch is connected to the Internet. *Id.* at ¶ 14. The single sample of a KardiaBand interoperating with the Apple Watch of which AliveCor is reasonably aware was a key exhibit in the co-pending ITC Investigation and therefore was not reasonably accessible to AliveCor or its counsel in this case. *Id.* at ¶ 13. In keeping with AliveCor's preservation obligations in that matter, the KardiaBand-Apple Watch exhibit was maintained in the possession of AliveCor's outside counsel for that matter (and made available to Apple's counsel in that case for inspection). *Id.* AliveCor only re-gained possession of the product after the Federal Circuit decision issued, concluding the ITC Investigation. *Id.* at ¶ 14. Counsel for AliveCor promptly took photos and videos of the KardiaBand, which form the basis of its proposed amendment here. *See, e.g., Netflix, Inc. v. Rovi Corp.*, No. 11-cv-06591-PJH (DMR), 2015 WL 3504969, at *4 (N.D. Cal. June 2, 2015) (allowing amendment when Netflix provided a "detailed account of its difficulties in finding evidence" in its possession custody, or control that illustrated its invalidity theory); *see also* Patent L.R. 3-6(b) (permitting a court to find good cause if there is "[r]ecent discovery of material, prior art despite earlier diligent search.").

For each of these prior art products, AliveCor promptly sought discovery related to the prior art products, notified Apple of third-party subpoenas, produced third-party documentation, and notified Apple of its intent to amend its invalidity contentions. Ducker Decl. at ¶¶ 5–14. Thus, the chronology underlying this motion underscores AliveCor's diligence, as there is no suggestion of gamesmanship—only more and better evidence of AliveCor's pre-existing, unchanged invalidity theories. *See Netflix, Inc.,* 2015 WL 3504969, at *5 (granting leave to amend when "Netflix's theory of invalidity has not changed since it served its original Infringement Contentions; what has changed is that Netflix has added better evidence to support that theory.").

## 2. Supplemental Exhibits A-13, A-14, A-15, A-16, A-17, A-18

The newly located prior art products (i.e., the New Balance, Life Fitness, and Precor products) were located based on a diligent search, including third-party discovery, for additional art. The '257 Patent claims a priority date of November 5, 2008, on its face and is directed to internal components

of a heart sensor that are not publicly discernible (e.g., "a first pad" "positioned underneath the exterior surface of the first portion" of an enclosure and a "connector" between the claimed pads and processor). *See, e.g.*, Dkt. 1-7 ('257 Patent) at cl. 1. While the parties agree that ECG monitoring by a wearable device existed in the prior art at the time of the claimed invention, many of the companies that produced such products are either out of business or have been acquired, making identification of sources of prior art more challenging. *See* '257 Patent at 1:49-2:3. By way of example but not limitation, Precor was acquired by Peloton in 2020, but much of Precor's manufacturing was eliminated thereafter.[12] Many of the relevant prior art products are more than 20 years old and have been discontinued, making finding them from public sources (much less finding sufficient technical details regarding their internal components) particularly challenging.

AliveCor diligently searched for and located potential prior art products from the inception of this case. *See, e.g.*, **Ex. A** at 14–15 (identifying prior art sales and public uses for the '257 Patent). AliveCor disclosed and charted the prior art products that had sufficient indicia of both public availability and detailed technical disclosures in its initial contentions—and continued to diligently investigate and pursue discovery regarding additional prior art products. Ducker Decl. at ¶¶ 3, 20. As soon as the stay was lifted in this case, AliveCor—informed by the parties' positions taken in the '257 Patent IPR Proceeding and litigation (claim construction) proceedings—cast a wide net with prior art subpoenas to New Balance, Life Fitness, and Precor. *Id.* AliveCor diligently pursued discovery from the third parties and was ultimately able to obtain sufficient evidence of the internal components of some of those products to produce Exhibits A-13 through A-18. *See* **Ex. D**.

Courts in this district have found that good cause exists to amend when "newly uncovered prior art" is identified during discovery, and "the prior art appears relevant to the merits of the case." *Golden Hour Data Sys., Inc. v. Health Servs. Integration, Inc.*, No. C 06-7477 SI, 2008 WL 2622794, at *4 (N.D. Cal. July 1, 2008); *see also Facebook, Inc. v. Blackberry Ltd.*, No. 18-cv-05434-JSW (JSC), 2020 U.S. Dist. LEXIS 31377, at *15–17 (N.D. Cal. Feb. 13, 2020) (granting leave to supplement prior art system discovered after contention deadline); *Longitude Licensing Ltd. v. Apple*

---

[12] https://www.supplychaindive.com/news/peloton-manufacturing-operations-precor/642137/ (last visited February 13, 2026).

*Inc.*, No. 14-cv-04275-EDL, 2015 WL 12778777, at *11 (N.D. Cal. Oct. 29, 2015) (granting leave to amend when prior art was discovered after the contention deadline); *Fujifilm*, 2014 WL 491745, at *4–6. After investigating the various products identified by the prior artists (including purchasing and tearing down a New Balance HRT Max) and obtaining substantial evidence from third-party subpoenas in October–November 2025, AliveCor diligently supplemented its contentions with claim charts "identifying specifically where and how in each alleged item of prior art each limitation of each asserted claim is found," as required by Patent L.R. 3-3. AliveCor also identified specific obviousness combinations for clarity. *See, e.g.*, **Ex. D** (Exhibit A-21 charting the New Balance HRT Max and Mills). AliveCor presented the universe of its amended charts to Apple on February 2, 2026, and at the time of this filing, Apple has not opposed the amendment or identified any potential prejudice that would inure from allowing such an amendment. Apple reserved the right to take a position upon filing of the present motion.[13] The new prior art products identified by AliveCor—i.e., the New Balance HRT Max, Life Fitness Exercise Equipment, Precor Exercise Equipment, and the Polar strap—are anticipating and/or single reference obviousness prior art references (*see* **Ex. D**) and thus highly relevant to AliveCor's invalidity theory for the '257 Patent and the overall merits of the case, and leave to amend should be granted. *See Yodlee, Inc. v. CashEdge, Inc.*, No. C 05-01550 SI, 2007 WL 1454259, *2 (N.D. Cal. May 17, 2007) ("If the new prior art is as material as CashEdge says it is, it would be unjust for information so highly material to "the merits to be avoided on the basis of such mere technicalities.") (citing *Foman v. Davis*, 371 U.S. 178, 181 (1962)).

### B. AliveCor Seeks Leave to Respond to Apple's Objections by Identifying Specific Prior Art Combinations in Support of Obviousness

AliveCor previously disclosed prior art combinations and several motivations to combine in

---

[13] AliveCor's proposed supplement is further justified based on the evolution of the parties' positions in this litigation. At the time AliveCor served its Invalidity Contentions in September 2023, AliveCor understood that the "underneath" limitation of the '257 Patent excludes exposed electrode designs based on the '257 Patent's prosecution history. Apple has since expressly elucidated its position that the "underneath" limitation neither forecloses an exposed electrode design nor requires that the claimed pad be fully covered by the enclosure. *See, e.g.*, **Ex. W** (Markman Tr.) at 10:9-12, 12:7-20. The appropriate construction of the claim language remains in dispute, but regardless, AliveCor's supplemental contentions reflect its understanding of the parties' positions as they have been clarified through the IPR and litigation proceedings. As this Court has found, it is neither unusual nor unreasonable for parties to continue "identifying and evaluating prior art" based on "new information learned in discovery." *Fujifilm*, 2014 WL 491745, at *4.

the cover pleading to its original Invalidity Contentions. Now, AliveCor seeks leave to amend its contentions to (1) specifically identify obviousness combinations from the previously-disclosed prior art and (2) to identify obviousness combinations with the newly identified prior art obtained through further diligent investigation and discovery.

AliveCor's amendment seeks to address and respond to Apple's complaint raised during discovery that "it is unclear what combinations" AliveCor is alleging. *See, e.g.*, **Ex. S** at 32. While AliveCor disagrees that its contentions were deficient, the Court should grant AliveCor leave to amend its contentions so as to resolve an open issue in dispute between the parties. *See Slot Speaker Technologies, Inc. v. Apple Inc.*, No. 13-cv-01161-HSG (DMR), 2017 WL 235049, at *6–7 (N.D. Cal. Jan .19, 2017) (granting Apple leave to amend in order to address complaints by Plaintiff that its invalidity contentions lacked specificity). Moreover, AliveCor's combinations for the '257 Patent are limited to combinations of prior art that are ***not*** subject to IPR estoppel. *See Ingenico Inc. v. IOGENGINE, LLC*, 136 F.4th 1354, 1367 (Fed. Cir. 2025). Therefore, AliveCor has been diligent in disclosing and narrowing its prior art combinations. The only new prior art references that AliveCor seeks to address in its obviousness combinations is (i) the product prior art discussed above in Section II.B.1.g and (ii) one single paper reference that was discovered by AliveCor's expert in or around September 2025.[14] Otherwise, all of the combination references were fully disclosed with exemplary citations to their contents in AliveCor's original contentions.

### C. AliveCor Diligently Pursued and Disclosed Its Proposed Amendments Based on the Parties' Agreed Claim Construction for the '898 Patent

AliveCor seeks to update existing invalidity charts for the '898 Patent in view of Apple's positions regarding the "detailed view" recited in the asserted claims. Apple's original infringement contentions alleged that the accused KardiaPro displays a detailed view of each claimed element (a graph representation and a selectable data sharing option), but pointed to two different screens for each constituent component. *See, e.g.*, **Ex. T** at 33-48. Thereafter, in response to AliveCor's IPR

---

[14] To the extent Apple argues that AliveCor is estopped from identifying new paper prior art references, courts in this District have allowed the addition of newly identified paper prior art in combinations not precluded by IPR estoppel. *See Advanced Micro Devices, Inc. v. LG Elecs., Inc.*, No. 14-cv-01012-SI, 2017 WL 2774339, at *5–6 (N.D. Cal. June 26, 2017); *see also Ingenico*, 136 F.4th at 1367 (Fed. Cir. 2025).

Petition, Apple took the position that the claimed "detailed view" must include both elements in a single "display of a view comprising **both** constituent elements." **Ex. U** at 1. AliveCor learned Apple's position on "detailed view" during the stay of this proceeding.[15] Following claim construction briefing, at the *Markman* hearing, the parties were able to reach an agreed upon construction that reflects this understanding that the claimed "detailed view" requires a single user interface. *See* Dkt. 161.

To address Apple's position in the IPR and the subsequent agreed upon claim construction, AliveCor seeks leave to supplement its prior invalidity charts with additional evidence (from the same prior art references). AliveCor's proposed amendments to Exhibits B-02, B-10, and B-11 do not proffer any new prior art, but merely demonstrate that the existing prior art discloses the "detailed view" limitation whether that limitation is in a single or multiple user interfaces. AliveCor diligently amended its contentions, and served the amended charts alongside the other amended and supplemental charts. Good cause exists when the supplementation is based on shifting positions after infringement contentions. *See, e.g.*, *Facebook*, 2020 U.S. Dist. LEXIS 31377, at *13–14 (noting that invalidity contentions are responsive to infringement contentions and granting leave to amend).

### D.  AliveCor Diligently Amended Its Cover Pleading

Finally, AliveCor seeks to amend the cover pleading to be consistent with the changes made to its amended and supplemental charts. AliveCor seeks to make these changes contemporaneously with the above amendments to avoid any delay or confusion. Thus, AliveCor has been diligent in amending its cover pleading.

* * *

AliveCor has demonstrated diligence thought its various investigation efforts, including at least AliveCor's correspondence with and subpoenas to the third parties, its continued prior art search related to prior art products, its prompt production of the third-party documents to Apple, and the timing of its motion after the production of documents by the third-parties. For this reason, the Court should grant AliveCor with leave to amend its invalidity contentions.

---

[15] Courts in this district have declined to include time a case was stayed in its measurement of diligence. *Netflix, Inc. v. Rovi Corp.*, No. 11-cv-06591-PJH (DMR), 2015 WL 3504969, at *4 (N.D. Cal. June 2, 2015).

### E.  Apple Will Not Be Prejudiced by AliveCor's Amendments.

Apple will not be prejudiced by AliveCor's proposed amendments. The "purpose of the patent local rule is to disclose invalidity theories and provide all parties with adequate notice of the information necessary to prepare the case." *TVIIM, LLC v. McAfee, Inc.*, No. 13-CV-04545-HSG, 2015 WL 3956313, at *6 n.2 (N.D. Cal. June 28, 2015) (finding no prejudice even where document relied on in motion for summary judgment of invalidity was not cited in invalidity contentions). Apple has more than adequate notice here, particularly as discovery deadlines have not been set. Even if AliveCor is unable to demonstrate diligence for any of the proposed amendments, the Court should exercise its discretion to grant leave because amendment here would not "disrupt the case schedule or other court orders." *Karl Storz*, 2016 WL 2855260, at *3.

Amended Exhibits A-04, A-09, B-04, D-01, D-03, and D-04 only provide additional supporting evidence to pre-existing invalidity theories. *See Network Appliance Inc. v. Sun Microsystems Inc.*, No. 07-cv-05488-EDL, 2009 WL 2761924, at *1, 7 (N.D. Cal. Aug. 31, 2009) (finding prejudice minimal because of overlap between reference and previously disclosed prior art). AliveCor's theories of invalidity have not changed, and AliveCor has merely identified and located additional evidence to support the theories. Apple is not prejudiced, and leave to amend should be granted. *See Golden Hour*, 2008 WL 2622794, at *4. Similarly, AliveCor's identification of specific obviousness combinations, made to respond to Apple's stated objections to its preview disclosure, cannot plausibly prejudice Apple because they are simply providing Apple with the disclosure it demanded. *See Slot Speaker Technologies*, 2017 WL 235049, at *6–7 (finding plaintiff would not be prejudiced by granting defendant leave to amend its combinations of prior art when plaintiff had also complained that defendant's invalidity contentions lacked specificity).

Further, there is no prejudice to Apple from AliveCor's proposed amendments to Exhibits B-02, B-10, and B-11 which are also limited to previously disclosed prior art. These amendments are responsive to the parties' agreed upon construction of the "detailed view" claim limitation in the '898 Patent and, therefore, would not impact or modify any of the claim construction proceedings that have taken place in this case. *Netflix, Inc.*, 2015 WL 3504969, at *5 (Plaintiff did not "provide[] any concrete examples of what it might have done differently"). There is no deadline for fact or expert

1    discovery and, thus, Apple has plenty of time to conduct any further investigation and formal

2    discovery it may require to respond to the new contentions. *THX*, 2016 LEXIS 57518, at *10 ("The

3    lack of prejudice is especially evident here, where the Court has not yet set a discovery deadline,

4    giving [plaintiff] ample time to conduct any further discovery necessitated by Apple's amendments.");

5    *Yodlee*, 2007 WL 1454259, at *2 ("[T]here is still ample time left in the discovery period, so the

6    Patent Local Rules' concern with parties sandbagging opponents late in the discovery period is also

7    not at issue.").

8            Apple has the same opportunity to conduct further discovery and investigation regarding the

9    contentions set forth in Exhibits A-13 through A-18. AliveCor only recently received the third-party

10   productions in response to its subpoenas. *See* Ducker Decl. at ¶¶ 15–17. Proposed invalidity charts

11   were provided to Apple on February 2, 2026. The time between AliveCor's receipt of third-party

12   documents and the filing this motion reflects its efforts to streamline its various efforts to amend its

13   contentions with art from multiple different entities into a single request to the Court. This amount of

14   time is neither unreasonable nor prejudicial to Apple. *Fujifilm*, 2014 WL 491745, at *6 ("The eight

15   months between when Fujifilm first discovered prior art to when it filed this motion is not an

16   insignificant amount of time, but the Court concludes that, on balance, if there was any unjustified

17   delay, it was not prejudicial."). Given that the parties have ample opportunity to further develop their

18   claims and defenses, and to obtain discovery relating thereto, no prejudice will inure to Apple from

19   granting AliveCor's Motion. *THX*, 2016 LEXIS 57518, at *10; *Yodlee, Inc. v. CashEdge, Inc.*, No. C

20   05-01550 SI, 2007 WL 1454259, *2 (N.D. Cal. May 17, 2007). Because there is no unreasonable risk

21   of unfair prejudice, AliveCor's Motion should be granted.

22   **V.     CONCLUSION**

23           For the aforementioned reasons, AliveCor respectfully requests that this Court grant its Motion

24   for Leave to Amend Invalidity Contentions Pursuant to Patent Local Rule 3-6.

25

26

27

28

**ALSTON & BIRD LLP**

Dated: February 13, 2026          BY:    */s/ Philip C. Ducker*

Philip C. Ducker (SBN 262644)
Michelle A. Clark (SBN 243777)
Katherine G. Rubschlager (SBN 328100)
55 Second Street, Suite 2100
San Francisco, California 94105-0912
Telephone: (415) 243-1000
Facsimile: (415) 243-1001
phil.ducker@alston.com
michelle.clark@alston.com
katherine.rubschlager@alston.com

M. Scott Stevens (admitted *pro hac vice*)
J. Ravindra Fernando (admitted *pro hac vice*)
Erin Beaton (admitted *pro hac vice*)
1120 South Tryon Street
Charlotte, NC 28203
Telephone: (704) 444-1000
Facsimile: (704) 444-1111
scott.stevens@alston.com
ravi.fernando@alston.com
erin.beaton@alston.com

Elliott Riches (admitted *pro hac vice*)
Chase Tower
2200 Ross Avenue, Suite 2300
Dallas, TX 75201
Telephone: (214-922-3492)
Fax: (214) 922-3899
elliott.riches@alston.com