# Exhibit C

Philip C. Ducker (SBN 262644)
Katherine G. Rubschlager (SBN 328100)
ALSTON & BIRD, LLP
560 Mission Street, Suite 2100
San Francisco, California 94105-0912
Telephone: (415) 243-1000
Facsimile: (415) 243-1001
phil.ducker@alston.com
katherine.rubschlager@alston.com

*Attorneys for Defendant AliveCor, Inc.*

*Additional counsel on signature page*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| APPLE INC.,<br><br>Plaintiff,<br><br>v.<br><br>ALIVECOR, INC.,<br><br>Defendant. | Case No. 4:22-cv-07608-HSG<br><br>**ALIVECOR'S PATENT L.R. 3-9 DISCLOSURE OF RESPONSIVE DAMAGES CONTENTIONS** |

Pursuant to the Local Rules of Practice for Patent Cases before the United States District Court for the Northern District of California ("Patent L.R."), Defendant AliveCor, Inc. ("AliveCor") hereby serves its Patent L.R. 3-9 Responsive Damages Contentions. AliveCor expressly reserves the right to supplement its contentions if and when Plaintiff Apple Inc. ("Apple") sets forth its computations of damages, pursuant to Patent L.R. 3-8. In addition, AliveCor expressly reserves the right to supplement its contentions based on additional information obtained in discovery. These Responsive Damages Contentions are preliminary in nature and are based on the limited information reasonably available to AliveCor at this time. Discovery relevant to Apple's damages contentions is ongoing.[1] Thus, AliveCor's analyses of issues relating to damages is just beginning. AliveCor thus reserves the right to modify and/or supplement these responsive damages contentions as additional information becomes available including discovery obtained from Apple and/or third parties, as Apple's positions are clarified, and/or as AliveCor's analysis of the damages issues develop. The contentions made herein are made in a good-faith effort to comply with Patent L.R. 3-9 based on information presently known and available to AliveCor.

## I. <u>RESPONSE TO PATENT LOCAL RULE 3-8</u>

### A. Introduction

Apple's infringement allegations are based on AliveCor's KardiaMobile, KardiaMobile 6L, KardiaMobile Card, Kardia App (including KardiaCare), KardiaPro (including devices and servers, and mobile applications) (the "Accused Products"). Apple alleges that the Accused Products infringe one or more of U.S. Patent Nos. 10,076,257; 10,866,619; 10,270,898; and 10,568,533 (collectively the "Asserted Patents").

In Apple's Damages Contentions ("Damages Contentions"), Apple states it is seeking (1) damages in the form of a reasonable royalty pursuant to 25 U.S.C. § 284, (2) reasonable attorneys' fees pursuant to 35 U.S.C. § 285, (3) interest and costs as fixed by the Court, and (4) an ongoing

[1] Apple contends that AliveCor "has not yet completed a fulsome document production." *See* Apple's Damages Contentions at 1. However, as of today, AliveCor has produced over 1,500 technical and damages related documents, including, inter alia, documents sufficient to show (1) the operation of the accused products (Patent L.R. 3-4(a)), and (2) the sales, revenue, cost, and profits for accused products since the alleged infringement began (Patent L.R. 3-4(d)). Any allegations that Apple does not have sufficient information to submit fulsome damages contentions are without merit.

royalty. AliveCor disagrees with the analysis provided in Apple's Damages Contentions for at least the reasons set forth herein. As an initial matter, Apple has failed to articulate its reasoning or provide any support for its alleged entitlement to (2) reasonable attorneys' fees pursuant to 35 U.S.C. § 285, (3) interest and costs as fixed by the Court, or (4) an ongoing royalty. To the extent that Apple supplements its Damages Contentions to provide this information in the future, AliveCor reserves the right to respond in turn.

Moreover, Apple is not entitled to any damages because AliveCor does not infringe the Asserted Patents and/or the Asserted Patents are invalid. AliveCor served invalidity contentions pursuant to Patent L.R. 3-4. AliveCor further expects to demonstrate Apple's lack of entitlement to damages during fact and/or expert discovery, including based on the Parties' responses to any interrogatory responses and AliveCor's non-infringement positions.

If the Asserted Patents are found valid and infringed, Apple has not demonstrated that it is entitled to pre-suit damages. AliveCor did not have notice of the Asserted Patents or its alleged infringement thereof until the filing of the Complaint. Therefore, Apple is not entitled to any damages prior to the date it filed its Complaint.

Likewise, if the Asserted Patents are found valid and infringed, Apple has not demonstrated that it marked the numbers of any of the Asserted Patents on any of its products or its licensees' products that use the claimed inventions. *See* 35 U.S. Code § 287(a) ("In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which the event damages may be recovered only for infringement occurring after such notice.").

As for damages, if any, after the date of the Complaint, Apple would be limited to a reasonable royalty. Damages should be calculated in the context of a hypothetical negotiation between the parties based on the factors set out in *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970). Apple's Damages Contentions do not include the reasonable royalty it would be entitled to and fails to otherwise provide sufficient basis to support its contentions.

### B. Response to Apple's Request for a Reasonable Royalty

Determination of a reasonable royalty is typically based on the hypothetical negotiation

framework set forth in *Georgia-Pacific Corp. v. United States Plywood Corp* ("Georgia-Pacific"). The hypothetical negotiation would have occurred on the later of: (1) the date the infringed patent(s) issued; or (2) the date the infringing product was first manufactured, used, offered for sale, or sold. AliveCor's allegedly infringing products include the KardiaMobile, KardiaMobile 6L, KardiaMobile Card, Kardia App (including KardiaCare), and KardiaPro (including devices and servers, and mobile applications) products and/or services.

Apple's Damages Contentions are deficient at least insofar as they do not "provide a good faith explanation of the theory of damages." Patent L.R. 3-8. *First*, Apple claims that "a reasonable royalty may take the form of a lump-sum or a running royalty applied to a royalty base" but does not indicate whether it is seeking a "lump-sum" or "running royalty." *Second*, Apple indicates that it "expects its damages expert to determine a reasonable royalty based on a two-step approach" but does not identify the second step of the approach. *Third*, Apple identifies what it claims are "[t]hree well-known and established approaches IP valuation that are frequently used in litigation and non-litigation settings" including "(i) the market approach, (ii) the income approach, and (iii) the cost approach" but does not identify which approach or approaches it intends to apply to the instant matter. In each case, Apple has failed to provide a "good faith explanation of the theory of damages." Patent L.R. 3-8.

In the sections that follow, AliveCor presents its preliminary understanding of facts and information that might have been considered by the parties to the hypothetical negotiation. AliveCor's preliminary understanding is limited given that Apple has yet to make a fulsome explanation of its damages contentions or assert its computations of damages.

***1.*** ***Georgia-Pacific* Factor No. 1:** *The royalties received by the patentee for the licensing of the Patent-in-Suit, proving or tending to prove an established royalty.*

Apple contends that it has not licensed the Asserted Patents. AliveCor reserves the right to supplement its response to this factor as discovery progresses in this case.

***2.*** ***Georgia-Pacific* Factor No. 2:** *The rates paid by the licensee for the use of other patents comparable to the patents-in-suit.*

As of the date of these Responsive Damages Contentions, Apple's infringement contentions

remain vague and conclusory, and are insufficient to allow AliveCor to determine which licenses, if any, might be comparable for purposes of this analysis. Thus, as of today, AliveCor is unaware of any comparable license agreements. AliveCor's investigation into potentially comparable license agreements is ongoing, and AliveCor will update these contentions should it identify any agreements it contends to be comparable licenses. AliveCor reserves the right to supplement its response to this factor as discovery progresses in this case.

Apple contends that although it has produced 13 licenses, "those licenses are not comparable to the hypothetical negotiation in this case." AliveCor reserves the right to contend that one or more of the licenses produced by Apple are comparable in light of any positions take by the Parties or Party representative during the remainder of discovery.

***3. Factor No. 3:*** *The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.*

Apple states that the license "would provide a non-exclusive right to make, use, sell, or offer to sell products and services within the United States." Based on the discovery to date, AliveCor cannot offer an opinion as to whether the license would be a non-exclusive license to make, use, sell or offer the Accused Products within the United States at this time. AliveCor reserves the right to supplement its response to this factor as discovery progresses in this case.

***4. Georgia-Pacific Factor No. 4:*** *The Licensor's established policy and marketing program to maintain its patent monopoly by not licensing others to use the invention or by gaining licenses under special conditions designed to preserve that monopoly.*

Apple contends that it "has a policy of not licensing its non-essential patent." To date, it has not provided any evidence of this policy through discovery. Therefore, based on the discovery to date, AliveCor cannot offer its contentions as to whether any adjustment to royalty rates would be appropriate in this case at this time. AliveCor reserves the right to supplement its response to this factor as discovery progresses in this case.

***5. Georgia-Pacific*** **Factor No. 5:** *The commercial relationship between the licensor and the licensee, such as, whether they are competitors in the same territory in the same line of business;*

*or whether they are inventor and promoter.*

Apple contends that both it and AliveCor offer products that practice the Asserted Patents. To date, Apple has not provided sufficient evidence to determine whether or not any of its products practice one or more of the Asserted Patents. Likewise, Apple has failed to take a position regarding whether or not the Parties are "competitors in the same territory in the same line of business." This position has been disputed in (1) other litigation between the Parties, and (2) AliveCor's currently-pending motion to stay. Based on the inconsistent positions taken by Apple to date, AliveCor cannot offer its contentions as to the commercial relationship between the licensor and the licensee at this time. AliveCor reserves the right to supplement its response to this factor as discovery progresses in this case.

***6.*** ***Georgia-Pacific*** **Factor No. 6:** *The effect of selling the patented specialty in promoting sales of other products of the licensee; the existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales.*

Apple contends that "the Accused Products enable revenues related to AliveCor's KardiaCare subscription service" and that "AliveCor could not generate such revenue without the sale of the other Accused Products." However, Apple concedes that it has not provided any factual support related to Factor No. 6. Therefore, based on the discovery to date, AliveCor cannot offer its contentions as to this factor at this time. AliveCor reserves the right to supplement its response to this factor as discovery progresses in this case.

***7.*** ***Georgia-Pacific*** **Factor No. 7:** *The duration of the patent and the term of the license.*

Apple alleges that "[a] license resulting from the respective hypothetical negotiation would have been for the unexpired term of the Patents-in-Suit, which will continue at least until August 28, 2039, the expiration of the last of the Patents-in-Suit." Apple's Damages Contentions fail to mention, however, that there are ongoing IPR proceedings concerning each of the Asserted Patents. Additionally, Apple fails to consider that AliveCor could easily design around or eliminate the claimed features in the Accused Products, which would reduce the term of any license to the Asserted Patents. Taken together, this would put downward pressure on the royalty rate negotiated at the hypothetical negotiation. AliveCor reserves the right to supplement its response to this factor as

discovery progresses in this case.

***8 and 11. Georgia-Pacific*** **Factor Nos. 8 and 11:** *The established profitability of the products made under the patent, its commercial success and its current popularity; and the extent to which the infringer has made use of the invention; and any evidence probative of the value of that use.*

Apple contends that AliveCor "has made substantial use of the invention, and that the patented systems and methods are fundamental to executing and delivering AliveCor's services." Apple's assertions are fundamentally incorrect. Even if the Asserted Patents are determined to be valid, and the Accused Products are found to infringe, Apple has failed to identify any evidence that the patented systems and methods are fundamental to the success of AliveCor's products.

Indeed, Apple concedes that its own products which practice three[2] of the Asserted Patents are successful due to a variety of factors, including unrelated features and technologies. Likewise, the success of the Accused Products derives from features which Apple does not claim to have patented. Therefore, based on the discovery to date, AliveCor cannot offer its contentions as to this factor at this time, but disagrees with Apple's sparse "analysis." AliveCor reserves the right to supplement its response to this factor as discovery progresses in this case.

***9 and 10. Georgia-Pacific*** **Factor Nos. 9 & 10:** *The utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results and the nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits of those who have used the invention.*

Apple alleges that the Asserted Patents "offer substantial utility and advantages over the old systems and methods" by describing the Asserted Patents in broad terms. For example, Apple asserts that the technologies reflected in the Asserted Patents include "integrated sensor[s], sealed button systems, user interfaces for monitoring ECG data, and methods to aggregate such data." However, the Asserted Patents do not claim ***every*** integrated sensor, sealed button system, user interface, or data aggregation method, nor has Apple attempted to identify any benefit attributable to the claimed inventions in the Asserted Patent. To the extent that the Asserted Patents are construed as broadly as

---

[2] Apple inconsistently asserts that it offers products that practice the Asserted Patents (G.P. Factor 5) and products that practice three of the Asserted Patents (G.P. Factors 8, 11).

implied by Apple's Damages Contentions they are likely invalid, and therefore have no utility or advantages over the old modes and devices.

Other than its conclusory statements, Apple fails to explain why the ***claimed*** techniques and structure are necessary or beneficial to optimize the Accused Products. Even if the Accused Products incorporated the alleged patent inventions—which they do not—discovery is expected to demonstrate that commercially available non-infringing alternatives were available at the time of the hypothetical negotiation. AliveCor expects to work with its technical expert to further identify non-infringing alternatives once Apple provides a clearer explanation of what specific functionality in the Accused Products allegedly meets the limitations of the asserted claims and after the asserted claims are construed.

Nevertheless, discovery is still in its early stages and AliveCor reserves the right to supplement its response to these factors as discovery progresses in this case.

***12.*** ***Georgia-Pacific*** **Factor No. 12:** *The portion of the profit or of the selling price that may be customary in the particular business or in the comparable business to allow for the use of the invention or analogous inventions.*

Apple provides no contentions related to this factor. Accordingly, and based on the lack of any discovery to date, AliveCor will provide its analysis of this factor as discovery unfolds. AliveCor reserves the right to supplement its response to this factor as discovery progresses in this case.

***13.*** ***Georgia-Pacific*** **Factor No. 13:** *The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.*

Apple contends that it "believes" that "a portion" of AliveCor's profits are attributable to the Asserted Patents, but does not provide any facts in support of its contentions. Accordingly, and based on the lack of any discovery to date, AliveCor will provide its analysis of this factor as discovery unfolds. AliveCor reserves the right to supplement its response to this factor as discovery progresses in this case.

***14.*** ***Georgia-Pacific*** **Factor No. 14:** *The opinion of qualified experts.*

AliveCor expects to rely on opinion testimony of one or more qualified technical experts and

one or more qualified damages experts. AliveCor expects the expert testimony to opine on one or more factors contained herein and will disclose such opinions pursuant to the schedule to be entered by the Court. AliveCor reserves the right to supplement its response to this factor as discovery progresses in this case.

***15.*** ***Georgia-Pacific*** **Factor No. 15.** *The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, that amount which a prudent licensee – who desires, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention – would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.*

Apple does not contend the exact structure or rate. Instead, Apple identifies the following "potential factors that ***may*** impact the hypothetical negotiation:"

- development cost information for the patented technology, survey or other evidence of consumer demand for the patented technology;
- Apple's willingness to make the patented technology available to other companies; and
- AliveCor's business plans for growing its sales and market share.

These negotiation positions would have been known and discussed by the parties during the hypothetical negotiation and would have exerted downward pressure on the negotiated royalty rate. AliveCor reserves the right to supplement its response to this factor as discovery progresses in this case.

**C. Computation of Damages**

AliveCor denies that Apple is entitled to a reasonable royalty as AliveCor does not infringe any valid and enforceable claim of any Asserted Patent. Apple does not state its contentions as to its computations of damages. As such, no further response from AliveCor is required. AliveCor reserves the right to supplement its response to Apple's Damages Contentions and any further supplements thereto.

## II. ADDITIONAL INFORMATION REQUIRED

### A. Patent L.R. 3-9

AliveCor requires additional information from Apple in order to provide a fulsome response to the disclosures required by Patent L.R. 3-9. Such information includes, but is not limited to:

- all additional information identified in Apple's Damages Contentions;
- Apple comparable license agreements or other agreements related to the Asserted Patents or related patents;
- documents providing a factual basis for Apple's contentions related to a royalty rate and royalty base;
- documents providing a factual basis for Apple's alleged entitlement to attorneys' fees; and
- deposition testimony from Apple, other fact witnesses, and expert witnesses regarding, *inter alia*, license agreements, licensing policies, the value of the patented technology, AliveCor's alleged notice of the infringement and the Asserted Patents, and expert reports.

**ALSTON & BIRD LLP**

Dated: November 29, 2023 BY: */s/ Philip C. Ducker*

Philip C. Ducker (SBN 262644)
Katherine G. Rubschlager (SBN 328100)
560 Mission Street, Suite 2100
San Francisco, California 94105-0912
Telephone: (415) 243-1000
Facsimile: (415) 243-1001
phil.ducker@alston.com
katherine.rubschlager@alston.com

M. Scott Stevens (admitted *pro hac vice*)
J. Ravindra Fernando (admitted *pro hac vice*)
Erin Beaton (admitted *pro hac vice*)
Bank of America Plaza
Suite 4000
101 South Tryon Street
Charlotte, NC 28280-4000
Telephone: (704) 444-1000
Facsimile: (704) 444-1111
scott.stevens@alston.com
ravi.fernando@alston.com
erin.beaton@alston.com

Thomas F. Finch (admitted *pro hac vice*)
1201 W. Peachtree St. NE
Suite 4900
Atlanta GA, 30309
Telephone: (404) 881-7000
Facsimile: (704) 881-7777
thomas.finch@alston.com

**CERTIFICATE OF SERVICE**

Pursuant to the Federal Rules of Civil Procedure and Civil L.R. 5, I hereby certify that, on November 29, 2023, all counsel of record who have appeared in this case were served with a copy of the foregoing via e-mail.

*/s/ Philip C. Ducker*
Philip C. Ducker